383 S.E.2d 100

Denise **CHAMBERLAIN**

v.

Howard **CHAMBERLAIN.**

No. 18683.

Supreme Court of Appeals of West Virginia.

July 27, 1989.

Clark B. Frame, Wilson Frame & Metheney, and Tom Rodd, Morgantown, for Howard Chamberlain.

Raymond H. Yackel, Oliver & Yackel, Morgantown, for Denise Chamberlain.

PER CURIAM:

In this appeal from a final order of the Circuit Court of Monongalia County, entered on November 20, 1987, this Court is asked to determine whether the defendant below, Howard Chamberlain, is entitled to reimbursement alimony under the principles of *Hoak v. Hoak*, 179 W.Va. 509, 370 S.E.2d 473 (1988). The trial court ordered Mr. Chamberlain to pay the plaintiff below, Denise Chamberlain, $16,137 of his expected military pension, and refused to reimburse Mr. Chamberlain for the money he spent to support Mrs. Chamberlain during the three years she attended law school prior to their final separation in May, 1984. We find no reversible error, and according-ly, the judgment of the trial court is affirmed.

At the time the parties were married on June 25, 1977, Mr. Chamberlain was a lieutenant in the Marine Corps, and Mrs. Chamberlain was a college student at Bethany College. The parties moved to Yuma, Arizona, where Mr. Chamberlain was stationed. Mrs. Chamberlain made arrangements to continue her undergraduate education at the University of Arizona and financed her undergraduate education with her own resources. While the parties lived in Yuma, Mrs. Chamberlain also worked part-time and performed the traditional duties of a homemaker.

In 1978, Mr. Chamberlain was promoted to captain, and the parties moved to San Francisco, California. In San Francisco, Mrs. Chamberlain attended Pepperdine University to complete her undergraduate education, worked part-time, and continued to be a homemaker.

The parties agreed that Mrs. Chamberlain would attend law school, and in the late summer of 1981, Mrs. Chamberlain moved from San Francisco to Morgantown, West Virginia, to attend West Virginia University College of Law. Mr. Chamberlain remained in San Francisco until he was transferred to Norfolk, Virginia, in 1982. The parties spent some weekends together while Mrs. Chamberlain was attending law school, and upon her graduation in 1984, they separated.

The parties were granted a divorce on January 9, 1985, based on irreconcilable differences. The parties' claims for reimbursement alimony and equitable distribution were addressed in a separate proceeding action. In a final order, entered on November 20, 1987, the trial court awarded Mr. Chamberlain sixty percent of the marital assets and ordered him to pay Mrs. Chamberlain $16,137, which represented forty percent of seven-twentieths of his expected military pension.

On appeal, Mr. Chamberlain asks this Court to reverse the order of the trial court and to remand the case for further proceedings so that the issue of reimbursement alimony may be considered under the

principles of *Hoak*. Mrs. Chamberlain asserts that the trial court correctly applied the law to the facts in this case and properly held that Mr. Chamberlain was not entitled to reimbursement alimony.

In Syllabus Point 2 of *Hoak, supra,* we held:

"The trial judge in a divorce proceeding may in an appropriate case award reimbursement alimony to a working spouse who contributed financially to the professional education of a student spouse, where the contribution was made with the expectation of achieving a higher standard of living for the family unit, and the couple did not realize that expectation due to divorce."

We recognized in *Hoak* that "[u]nlike an award based on the value of a professional degree, reimbursement alimony is based on the actual amount of contributions, and does not require a judge to guess about future earnings, inflation, the relative values of the spouses' contributions, etc." 179 W.Va. at 513, 370 S.E.2d at 477. We noted, however, that in a case where the student spouse also contributes to the education, it may be difficult to ascertain the working spouse's contribution. 179 W.Va. at 514, 370 S.E.2d at 478. We further stated that the decision to award reimbursement alimony was within the discretion of the trial court and that the trial court should try to make a fair and reason-able award based on the facts of each case and the method it deems appropriate. 179 W.Va. at 515, 370 S.E.2d at 479.

This Court recently discussed our decision in *Hoak* allowing reimbursement alimony in *Lambert v. Lambert*, 180 W.Va. 317, 376 S.E.2d 331 (1988), where we observed that:

"[t]he decision to make such an award will depend on numerous factors, to be determined by the trial judge, including the degree to which the equitable distribution of marital property, once fully ascertained, already reflects such reimbursement." 180 W.Va. at 319, 376 S.E.2d at 333. (Citation omitted).

Finally, in *Hoak* we recognized that not every spouse who contributes toward his or her partner's education is entitled to reimbursement alimony and that the supporting spouse in a marriage of many years should be compensated in the division of marital property. 179 W.Va. at 515, 370 S.E.2d at 479.

■ In the instant case, the trial court found that the facts of the case did not support Mr. Chamberlain's claim for reimbursement alimony. Instead, the trial court considered Mr. Chamberlain's support of his wife during her law school education under the principles of equitable distribution set forth in W.Va.Code, 48–2–32(c).[1] The trial court found that Mrs.

---

1. W.Va.Code, 48–2–32(c), provides, in relevant part:

"In the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to any attribution of fault to either party which may be alleged or proved in the course of the action, after a consideration of the following:

"(1) The extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by monetary contributions, including, but not limited to:

"(A) Employment income and other earnings; and

"(B) Funds which are separate property.

"(2) The extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by nonmonetary contributions, including, but not limited to:

"(A) Homemaker services;

\* \* \* \* \* \*

"(C) Labor performed without compensation, or for less than adequate compensation, in a family business or other business entity in which one or both of the parties has an interest;

\* \* \* \* \* \*

"(E) Labor performed in the management or investment of assets which are marital property.

"(3) The extent to which each party expended his or her efforts during the marriage in a manner which limited or decreased such party's income-earning ability or increased the income-earning ability of the other party, including, but not limited to:

"(A) Direct or indirect contributions by either party to the education or training of the other party which has increased the income-earning ability of such other party; and

"(B) Foregoing by either party of employment or other income-earning activity

Chamberlain did not pursue her legal education during the first years of marriage by agreement of the parties in order to promote the military career of her husband and that she did benefit her husband's career. The trial court also found that Mr. Chamberlain had contributed to his wife's legal education, but that he did not compromise his military career or suffer financially from this. The trial court determined that it could not value the contributions of one spouse in an amount greater than those of the other and concluded that each had contributed substantially and equally to the income-earning ability of the other.

The evidence indicates that Mrs. Chamberlain supported her husband's military career by attending military functions, assisting her husband's staff in writing newspaper articles and press releases, and acting as a bookkeeper for her husband while he was President of the Aero Club in Arizona. She also worked part-time and provided homemaker services. The evidence further indicates that Mrs. Chamberlain's mother contributed financially to her law school tuition and books, in addition to providing her daughter with a monthly allowance.

Mr. Chamberlain also contributed financially to Mrs. Chamberlain's legal education and provided support for her throughout their seven-year marriage. However, it does not appear that Mr. Chamberlain experienced any financial setback or change in his career because Mrs. Chamberlain attended law school. Although Mr. Chamberlain was forced to resign as an officer in the Marine Corps after he received poor performance evaluations, there is nothing in the record to indicate that this was a result of Mrs. Chamberlain's pursuit of a legal education.

We find that the trial court had substantial evidence to support its determination that reimbursement alimony should not be awarded, since each party contributed equally to the income-earning ability of the other. Accordingly, we find no error which would warrant reversal of the trial court's determination of this issue.

Mr. Chamberlain next assigns as error the trial court's ruling that Mrs. Chamberlain was entitled to 40 percent of the pension which he earned during the seven-year marriage. Mr. Chamberlain contends that his wife only lived with him during four years of his career, and therefore, she should only receive credit for 40 percent of one-fifth of his pension.[2]

We stated in Syllabus Point 2 of *Butcher v. Butcher*, 178 W.Va. 33, 357 S.E.2d 226 (1987):

> "Where an equitable distribution claim is made on a military retirement pension, courts have utilized their general law on equitable distribution of property, and have also applied what may be termed the 'coverture factor' to determine the nonmilitary spouse's share. This factor is applied once the initial marital share is determined and consists of the ratio of the number of years the parties have been married while the service person has been in the military to the total number of years of military service."

■ The trial court applied the coverture factor to determine Mrs. Chamberlain's share of Mr. Chamberlain's military retirement pension. The trial court recognized that the defendant was in the military during the entire seven-year period of the marriage, and calculated the retirement benefits on the basis of Mr. Chamberlain's twenty years of military service. The trial court found that the fraction of seven-twentieths, or 35 percent, would be the appropriate coverture factor in this case. The trial court calculated the present value of this percentage of Mr. Chamberlain's pension to be $42,482, and ruled that Mrs. Chamberlain was entitled to a portion equaling 40 percent of that amount, the present value of which was $16,993. In

---

through an understanding of the parties or at the insistence of the other party."

**2.** We are not cited any law to support this point. From a practical standpoint in many military marriages, the parties while married will be separated, as the military spouse may be ordered to duty posts away from the family domicile. It would be unjust to the nonmilitary spouse to count only the time they actually lived together for pension purposes.

calculating this amount, the trial court applied a discount rate of 6 percent and also considered the reduction in retirement pay over the first six years of Mr. Chamberlain's retirement, since he will be retiring as a gunnery sergeant rather than as a captain. The trial court made an additional adjustment for the division of automobiles and personal property, in the amount of $856 in favor of Mr. Chamberlain, and ordered him to pay Mrs. Chamberlain $16,137.

We find that the trial court properly applied the coverture factor to determine Mrs. Chamberlain's share of Mr. Chamberlain's military pension and, therefore, the trial court's ruling on this issue is also affirmed.

■ Mr. Chamberlain also assigns as error the trial court's determination that he was not entitled to any credit for assuming

responsibility for the joint debts incurred during the marriage. Based upon the facts before us, we cannot conclude the trial court's ruling on this issue was clearly wrong.[3] *See Lambert v. Lambert, supra;* Syllabus Point 3, *Bickler v. Bickler,* 176 W.Va. 407, 344 S.E.2d 630 (1986); Syllabus Point 3, *Taylor v. Taylor,* 128 W.Va. 198, 36 S.E.2d 601 (1945).

For the foregoing reasons, the judgment of the Circuit Court of Monongalia County is affirmed.

Affirmed.

---

3. The trial court found that the joint debts were paid, in part, from a joint savings account that existed at the time of the separation of the parties. At that time, Mr. Chamberlain closed all bank accounts and took the money. The trial court ruled that Mrs. Chamberlain was not entitled to any amount from the savings account and that Mr. Chamberlain was not entitled to credit for assuming the joint debts.