391 S.E.2d 627

**Dorothy Mae LANGDON**

v.

**William H. LANGDON, Jr.**

**No. 18873.**

Supreme Court of Appeals of
West Virginia.

March 23, 1990.

---

Charles E. Heilmann, Chambers, Chambers & Heilmann, Huntington, for Dorothy Langdon.

Michael A. Woelfel, Huntington, for William H. Langdon, Jr.

PER CURIAM:

The appellant, Dorothy Mae Langdon, appeals a final order of the Circuit Court of Cabell County dated March 9, 1988, which denied her petition to set aside the final divorce decree. Mrs. Langdon contends that the final divorce decree should be set aside on the grounds that the property

settlement agreement she entered into with the appellee, William H. Langdon, Jr., was based upon a mistaken value of his retirement income. We find that this case should be remanded to ascertain the value of the appellee's pension and to set the appellant's share of the retirement benefits.

On September 19, 1986, Mrs. Langdon filed for divorce in Cabell County on the grounds of irreconcilable differences. A temporary order was entered on October 30, 1986, requiring both parties, among other things, to file a disclosure statement pursuant to *W.Va.Code*, 48–2–33.[1]

On November 10, 1986, Mr. Langdon filed his answer and counterclaim. Mr. Langdon also alleged that irreconcilable differences existed between the parties and requested that he be granted a divorce.

On February 18, 1987, Mr. Langdon filed his disclosure of assets and liabilities. In that document, Mr. Langdon disclosed that the value of his pension plan with the West Virginia Teachers Retirement System was $36,583.26.

A hearing was held before the family law master on May 14, 1987. The parties had previously entered into an oral property settlement agreement and submitted a nine-page itemization identifying each party's personal property. In addition, the parties jointly submitted an exhibit identifying five items of property which were in dispute.

In a recommended decision dated May 20, 1987, the family law master proposed that: (1) an order be entered granting the parties a divorce on the grounds of irreconcilable differences; (2) Mrs. Langdon be awarded $800 per month as alimony, to cease upon the death of either party or upon her remarriage, (3) Mrs. Langdon be given $15,000 for her interest in the marital residence and Mr. Langdon's retirement account; and (4) that the settlement agreement be approved. The circuit court entered an order on June 16, 1987, approving the agreement and granting the divorce.

The parties subsequently moved the circuit court to amend the final order. On September 17, 1987, the circuit court amended the final order by adding provisions to: (1) enjoin the parties from harassing each other; (2) require Mr. Langdon to maintain a term life insurance policy on his life for a period of five years from the date of the final hearing; and (3) prohibit Mrs. Langdon from seeking an increase in alimony in the future.

The circuit court entered another order on November 2, 1987, finding Mrs. Langdon in contempt of the prior order of the court and directing her to execute a deed to the jointly owned real estate to Mr. Langdon. The circuit court further directed Mr. Langdon to pay her $15,000, upon execution of the deed.

On February 8, 1988, Mrs. Langdon sought to reopen the proceeding and to conduct a hearing to determine the actual value of Mr. Langdon's retirement fund.[2]

---

1. *W.Va.Code*, 48–2–33(a) provides, in relevant part, that: "the court may, or upon pleadings or motion or either party the court shall, require each party to furnish, on such standard forms as the court may require, full disclosure of all assets owned in full or in part by either party separately or by the parties jointly."

2. Rule 60(b) of the *West Virginia Rules of Civil Procedure* provides, in relevant part:

    (b) *Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), (3), and (6) not more than eight months after the judgement, order, or proceeding was entered or taken. A motion

Mrs. Langdon asserted that Mr. Langdon's interest in his pension fund was substantially greater than what he previously disclosed.

In response, Mr. Langdon contended that the information contained in his disclosure of assets and liabilities was accurate as of the date upon which it was filed. Furthermore, Mr. Langdon alleged that Mrs. Langdon was repeatedly harassing him in violation of the final order entered on June 16, 1987.

A hearing was held on February 25, 1988. At the hearing, the executive secretary of the West Virginia Teachers Retirement Board, Willard M. Ansel, testified with regard to Mr. Langdon's retirement account. Both parties also testified.

In a recommended decision dated February 29, 1988, a family law master ruled that the information received by Mr. Langdon from the West Virginia Teachers Retirement System was accurate as of the date it was given and that the net value of the marital property is ordinarily determined as of the date of the commencement of the suit as provided in *W. Va. Code*, 48-2-32(d)(1).[3] By order dated March 9, 1988, the circuit court denied Mrs. Langdon's motion. On October 24, 1988, Mrs. Langdon appealed the circuit court's decision.

The principal issue in this appeal is whether the circuit court erred in failing to set aside and modify the final divorce decree on the grounds that the parties' property settlement agreement was based upon an inappropriate value of Mr. Langdon's retirement account. Mrs. Langdon asserts that her former husband grossly misrepresented facts relative to the value of his pension account. Mr. Langdon contends that the value of his pension account which appeared in his disclosure of assets and liabilities was the amount given to him by Mr. Ansel and that no misrepresentation occurred.[4]

■ This Court recognized that pension plans are marital property in syllabus point 4 of *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987): "Although *W. Va. Code*, 48-2-1 (1984) and *W. Va. Code*, 48-2-32 (1984) did not specifically mention pension plans as marital property available for equitable distribution, these two *Code* sections were broad enough to encompass pension plans." *See also* syllabus point 1, *Rogers v. Rogers*, 182 W.Va. 388, 387 S.E.2d 855 (1989); syllabus point 2, *Raley v. Raley*, 181 W.Va. 254, 382 S.E.2d 91 (1989).

■ Although we declined to prescribe any specific method for distributing pen-

under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

The issue of whether the family law master or the circuit court had jurisdiction to consider the appellant's petition to reopen was not raised. The proper procedure would have been for the appellant to have made a motion pursuant to Rule 60(b) rather than a petition to reopen. However, we shall treat the appellant's petition as a motion made pursuant to Rule 60(b). *See generally Savas v. Savas*, 181 W.Va. 316, 382 S.E.2d 510 (1989).

3. *W. Va. Code*, 48-2-32(d)(1) provides:

After considering the factors set forth in subsection (c) of this section, the court shall:

(1) Determine the net value of all marital property of the parties as of the date of the commencement of the action or as of such later date determined by the court to be more appropriate for attaining an equitable result[.]

4. Mr. Langdon also asserts that the appeal was improvidently awarded because the final di-

vorce order was entered more than eight months prior to the filing of the appeal, and that the appellant did not seek an extension of time as provided by *W. Va. Code*, 58-5-4 and Rule 3(a) of the Rules of Appellate Procedure.

*W. Va. Code*, 58-5-4, provides in pertinent part: "No petition shall be presented for an appeal from, or writ of error or supersedeas to, any judgment, decree or order, ..., which shall have been rendered or made more than eight months before such petition is presented." Similar language is also included in Rule 3(a) of the Rules of Appellate Procedure.

Here, however, Mrs. Langdon has appealed the circuit court's final order entered on March 9, 1988, denying her motion to set aside the divorce decree. This Court has held that an order denying a motion made pursuant to Rule 60(b) is final and appealable. *Coury v. Tsapis*, 172 W.Va. 103, 304 S.E.2d 7 (1983); *State ex rel. Miller v. Sencindiver*, 170 W.Va. 288, 294 S.E.2d 90 (1982); *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974). This appeal was filed within eight months of that order, and it appears that,

sion benefits at divorce, we discussed some broad guidelines in syllabus point 5 of *Cross:*

> When a court is required to divide vested pension rights that have not yet matured as an incident to the equitable distribution of marital property at divorce, the court should be guided in the selection of a method of division by the desirability of disentangling parties from one another as quickly and cleanly as possible. Consequently, a court should look to the following methods of dividing pension rights in this descending order of preference unless peculiar facts and circumstances dictate otherwise: (1) lump sum payment through a cash settlement or off-set from other available marital assets; (2) payment over time of the present value of the pension rights at the time of divorce to the non-working spouse; (3) a court order requiring that the non-working spouse share in the benefits on a proportional basis when and if they mature.[5]

■ In the instant case, Mr. Langdon was still working at the time the parties entered into the property settlement agreement. Mr. Langdon did not retire until two weeks after the final divorce decree was entered. Yet, his retirement was contemplated by the parties at the time of the divorce.

The significant assets of the marriage consisted of the marital residence and Mr. Langdon's pension account. The marital residence was appraised at $40,500, with a mortgage of $19,836.07. Furthermore, Mr. Langdon had disclosed that his pension account was valued at $36,583.26.

Under the property settlement agreement, Mrs. Langdon conveyed her share of the marital residence to Mr. Langdon and was paid $15,000 in cash. Mr. Langdon assumed the mortgage and agreed to pay Mrs. Langdon alimony in the amount of $800 per month, until the death of either party or her remarriage.

From the record, we do not find that Mr. Langdon intentionally or grossly misrepresented the amount of his retirement account. Mr. Ansel testified that Mr. Langdon had asked him what the value of his retirement account would be if he withdrew it at that time. Mr. Ansel testified that he told Mr. Langdon the amount would be $36,583.26.

Mr. Ansel also testified that at the time Mr. Langdon retired, the value of his pension, had he chosen to withdraw it, would have been $54,934.66.[6] Instead, Mr. Langdon chose an option in which he would receive monthly payments throughout his life and thus, Mr. Ansel testified that the actuarial value of his pension would be $264,840.88.

It appears from the record, therefore, that the parties were not aware of the options available to Mr. Langdon under the pension fund and did not realize the value of the pension account. Thus, the property settlement agreement and the final divorce decree were based upon a mistaken value

---

under the circumstances, it was filed within a reasonable time. *See Savas v. Savas, supra.*

5. In *Butcher v. Butcher*, 178 W.Va. 33, 357 S.E.2d 226 (1987), however, this Court explained a specific method to be applied in calculating a nonmilitary spouse's share of a military retirement pension. In syllabus point 2 of *Butcher* we stated:
> Where an equitable distribution claim is made on a military retirement pension, courts have utilized their general law on equitable distribution of property, and have also applied what may be termed the 'coverture factor' to determine the nonmilitary spouse's share. This factor is applied once the initial marital share is determined and consists of the ratio of the number of years the parties have been married while the service person is in the military to the total number of years of military service.

The application of the coverture factor or fraction is not limited to military retirements pensions and has been used in calculating a spouse's share of other types of employee benefits. *See generally Moore v. Moore*, 114 N.J. 147, 553 A.2d 20 (1989); *McDermott v. McDermott*, 150 Vt. 258, 552 A.2d 786 (1988); Skoloff, *How to Evaluate and Distribute Employee Benefits in a Divorce*, 6 Nat'l L.J. 25, 26 (February 13, 1984).

6. The value of Mr. Langdon's pension account, including interest, had increased by $18,351.40 from the time he disclosed his assets on February 18, 1987, to the time he retired on July 1, 1987.

of the pension account.[7] Accordingly, we believe this case should be remanded to the circuit court with directions to ascertain the value of Mr. Langdon's pension account and to establish the share to which Mrs. Langdon is entitled.

Reversed and remanded.

---

**7.** In terms of giving effect to the concepts of equitable distribution, to allow the figures used in this case to stand would not give Mrs. Langdon an equitable share of the marital property.