438 S.E.2d 582

**Mary Jane Murphy SMITH, Plaintiff Below, Appellant,**

v.

**John Francis SMITH, Defendant Below, Appellee.**

No. 21668.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1993.

Decided Dec. 10, 1993.

F. Cody Pancake, Barr & James, Keyser, for appellant.

R. Joseph Zak, Zak & Associates, Charleston, for appellee.

PER CURIAM:

This is an appeal by Mary Jane Smith from a June 30, 1992, order of the Circuit Court of Mineral Count granting her a share of the military pension of her former husband, Appellee John Francis Smith, based upon a coverture factor of sixteen years, eleven and one-half months. The lower court also declined to order the Appellee to designate the Appellant as the beneficiary on a military survivor benefit plan. The Appellant contends that the Circuit Court erred in its calculation of her share of the military pension and in denying her request to be named as the beneficiary on the survivor benefit plan.

I.

The parties were married in Keyser, West Virginia, on August 17, 1968, and soon moved to Morgantown where the Appellee obtained a degree in Forestry from West Virginia University. The Appellant was a homemaker and remained unemployed during her husband's studies. On July 17, 1969, the Appellee entered military service and was stationed in Oklahoma. In October 1969, the parties relocated to West Germany for military service. The Appellant remained unemployed and had one child who died shortly after birth. In August 1971, the parties' only living child, Sean Smith, was born.

In December 1971, the family returned to the United States. The Appellee was thereafter sent to Korea where he remained until March 1973. Again, the Appellant assumed caretaking duties and was unemployed. Upon the Appellee's return from Korea, the family relocated to Oklahoma where the Appellee attended an advanced course for officers. He was thereafter stationed in Germany again.

Although the Appellant had accompanied her husband to Germany, she and Sean returned to the United States three months prior to the Appellee's return in 1977. The Appellant then took two courses at the University of Maine but did not obtain a degree.[1] The Appellee received a Masters Degree in Education during the family's stay in Maine.

In 1980, the Appellee was promoted to the rank of Major and was transferred back to Germany where the family remained until 1986. While in Germany, the Appellant decided to obtain a divorce. She informed her husband of this decision in November 1985 when she and Sean returned from the United States after having spent the summer with the Appellant's mother. By March 1986, the parties began to occupy separate bedrooms. In July 1986, the Appellant returned to the United States alone, and the parties have been continuously separated since that time. The Appellee and Sean, then age fourteen, remained in Germany.[2]

---

1. Although the record indicates that the Appellant did not obtain a degree while taking courses in Maine, she apparently did have a previously obtained degree in home economics, as well as limited secretarial skills.

2. The Appellant obtained employment for ten months with the Allegheny Community College

On November 10, 1986, the Appellant initiated a divorce complaint. By order dated September 2, 1987, Family Law Master Charles Parsons granted custody of Sean to the Appellee and granted the Appellant $350 per month in temporary support. At the final divorce hearing before the family law master on March 26, 1991, the Appellee was granted custody of Sean[3] and testimony of the parties was taken. The family law master issued a recommended decision on May 21, 1991, and the lower court affirmed that decision on June 30, 1992. The court, pursuant to the family law master's recommendation, ordered the following: (1) the Appellee was responsible for all marital debts, (2) the Appellee was responsible for court costs and attorney fees, (3) the Appellant was entitled to a share of the military pension based on a coverture factor of sixteen years, eleven and one-half months, (4) the Appellee was ordered to pay forty-eight months of rehabilitative alimony at $900 per month, and (5) the Appellee was permitted to retain his IRA account and his automobile.

The Appellant asserts two assignments of error: first, she contends that the lower court erred by failing to order that she be designated as the irrevocable beneficiary of the Appellee's military survivor benefit plan, as set forth in 10 U.S.C. § 1450(f)(4). Second, she contends that the lower court erred in calculating her portion of the Appellee's military pension by basing it on a coverture factor of sixteen years, eleven and one-half months.

## II.

The survivor benefit plan is designed to provide financial security to a designated beneficiary of a military member, payable only upon the member's death in the form of an annuity. Upon the death of the member, all pension rights are extinguished, and the only means of support available to survivors is in the form of the survivor benefit plan. Under the Federal Uniform Services Former Spouses Protection Act, 10 U.S.C. § 1408 et seq., enacted in 1983, military retirement benefits such as the survivor benefit plan may be treated as an asset for division under marital distribution principles.

■ It is well-settled that a spouse's entitlement to pension or retirement benefits must be considered a marital asset in the equitable distribution of marital property. In *Butcher v. Butcher,* 178 W.Va. 33, 357 S.E.2d 226 (1987), we held that military non-disability benefits are marital property within the meaning of West Virginia Code § 48–2–15(j) (1984). Specifically, we explained in syllabus point 1 that "[m]ilitary nondisability retirement benefits as set out in 10 U.S.C. § 1408 are subject to alimony and child support payments under W.Va.Code, 48–2–15(j) (1984), and are marital property subject to division under our equitable distribution statute. W.Va.Code, 48–2–32(j) (1984)." *Id.* at 34, 357 S.E.2d at 227.

■ Moreover, in syllabus point 1 of *Langdon v. Langdon,* 182 W.Va. 714, 715, 391 S.E.2d 627, 628 (1990), we held the following: " 'Although *W.Va.Code,* 48–2–1 (1984) and *W.Va.Code,* 48–2–32 (1984) did not specifically mention pension plans as marital property available for equitable distribution, these two *Code* sections were broad enough to encompass pension plans.' Syl. pt. 4, *Cross v. Cross,* 178 W.Va. 563, 363 S.E.2d 449 (1987)." While the lower court in the instant case awarded the Appellant a portion of the Appellee's pension benefit, it refused to designate the Appellant as a beneficiary of the survivor benefit plan or otherwise treat such plan as marital property.

A military member formerly had complete control over the individual to be designated as the beneficiary of the survivor benefit plan. However, pursuant to a 1985 amendment to 10 U.S.C. § 1450(f)(4), courts were authorized to order a military member to provide the annuity to a former spouse regardless of the intentions of the military member. In *Paul v. Paul,* 410 N.W.2d 329

and was later employed by the Maryland Legal Aid Bureau from December 1987 through January 1988. She also worked for the Maryland State Highway Department from January 1988 through July 1988.

**3.** By this point, nineteen-year-old Sean had resided with the Appellee for approximately four and one-half years.

(Minn.Ct.App.1987), for example, the Court of Appeals of Minnesota affirmed the lower court's requirement that a military member designate his former spouse as the beneficiary under the plan. In *Paul*, the court noted that the survivor benefit plan "provides benefits to . . . [the spouse] upon . . . [the military member's] death and is essentially a life insurance policy unrelated to . . . [the military member's] pension." *Id.* at 333.

In *Johnson v. Johnson*, 602 So.2d 1348 (Fla.Dist.Ct.App.1992), the District Court of Appeal of Florida, Second District, held that a wife was to be awarded a proper share of *both* the former husband's military retirement plan *and* the survivor benefit plan. *Id.* at 1350. Noting the "potential unfairness" to the wife should her former husband predecease her, thereby extinguishing pension rights, the court remanded the case for appropriate resolution. *Id.* [4]

We remand the matter to the lower court with directions to enter an order designating the Appellant as the beneficiary of the Appellee's survivor benefit plan in order to assure her continued support should her former husband predecease her. If the Appellant were not so designated, the pension payments would cease upon the Appellee's death, and she would be left with nothing. Further, we instruct the lower court to fashion the order such that the premiums necessary to sustain the survivor benefit plan be deducted from the military pension prior to its disbursement to either party. The premiums will be paid monthly by the Appellee only after he ceases active duty. Thus, upon retirement, the premiums will be deducted from his military pension.

### III.

The Appellant also asserts that the lower court miscalculated the coverture factor in determining her share of the military pension. The lower court used sixteen years, eleven and one-half months, as part of the formula, based upon the length of time the parties were married prior to the Appellant's departure from the marital home in Germany. The Appellant contends, however, that the proper coverture factor to be employed would have been twenty-two years, eleven and one-half months, based upon the total length of the parties' marriage.

The *Butcher* decision enunciated guidelines for the calculation of the spouse's share of the military pension. We explained the following in syllabus point 2 of *Butcher*:

> Where an equitable distribution claim is made on a military retirement pension, courts have utilized their general law on equitable distribution of property, and have also applied what may be termed the 'coverture factor' to determine the nonmilitary spouse's share. This factor is applied once the initial marital share is determined and consists of the ratio of the number of years the parties have been married while the service person has been in the military to the total number of years of military service.

178 W.Va. at 34, 357 S.E.2d at 227.

In *Chamberlain v. Chamberlain*, 181 W.Va. 468, 383 S.E.2d 100 (1989), we elaborated on the application of the coverture factor and specifically noted the inequity of determining this factor based solely upon the number of years the parties were actually living together. *Id.* at 471, 383 S.E.2d at 103. In *Chamberlain*, however, this issue was addressed in the context of unavoidable absences from one another. *Id.* at 469, 383 S.E.2d at 101. In the present case, the difference between the lower court's calculation and the Appellant's calculation represents the time between the Appellant's departure from the marital home with the in-

---

4. With regard to payments to a spouse after the death of the obligor, we have consistently held that alimony payments may survive the death of the obligor and be disbursed from the obligor's estate. In syllabus point 1 of *Matter of Estate of Weller*, 179 W.Va. 804, 374 S.E.2d 712 (1988), for instance, we explained the following:

"While as a general rule alimony does not survive the death of the payor former spouse, where there are compelling equitable considerations which militate against a deceased former spouse's estate, the circuit court has the power to make such an award pursuant to the same authority which entitled a court of equity to modify any alimony award to reflect changed circumstances." Syl. pt. 2, *In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45 (1978).

tention of dissolving the marriage and the actual divorce decree. Thus, the question at bar is distinguishable from that posed in *Chamberlain*. Under these circumstances, we do not believe that the lower court erred in applying the sixteen years, eleven and one-half months to determine the coverture factor. We therefore affirm that portion of the decision of the lower court.

Affirmed in part; Reversed in part; and Remanded.