724 S.E.2d 312

**In re the Marriage of Margaret P. ZICKEFOOSE, Respondent below, Petitioner**

v.

**Joseph L. ZICKEFOOSE, Petitioner below, Respondent.**

No. 11–0073.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 2012.

Decided Feb. 10, 2012.

Randall W. Galford, Esq., Summersville, WV, for the Petitioner.

Michelle L. Johnson, Esq., Johnson Law Office, PLLC, Dunbar, WV, for the Respondent.

KETCHUM, C.J.:

This divorce action is before this Court upon the appeal of Margaret P. Zickefoose ("wife") from the December 13, 2010, order of the Circuit Court of Kanawha County. The order set aside the award entered in the family court directing Joseph L. Zickefoose ("husband") to pay $1,000.00 per month in permanent spousal support and, instead, directed him to pay $500.00 per month in spousal support for 18 months. The wife asks this Court to reinstate the family court's award.

The principal issue raised by the parties is one of first impression in this State. It is whether disability benefits from the Department of Veterans Affairs can be considered in determining the amount of spousal support to be paid by a former spouse upon dissolution of the marriage. Although that issue has been resolved in other jurisdictions with mixed results, an examination of those authorities demonstrates that the predominant view would include the disability benefits among the resources or recurring earnings of the payor spouse. This Court adopts that inclusionary view.

In the current action, the family court considered the husband's military disability benefits and his other sources of income in awarding the wife permanent spousal support. The final order of the circuit court, however, failed to address with any specificity how those disability benefits were taken into account in setting aside the family court decision. The circuit court did not determine that any of the factual findings of the family court were clearly erroneous. Moreover, the circuit court failed to explain how it arrived at the $500 amount or why it should be paid by the husband for no more than 18 months. Accordingly, this Court reverses the December 13, 2010, order. We remand this action to the circuit court for further proceedings and the entry of a final order addressing with particularity the findings, conclusions and award of the family court Judge.

## I.

### Factual Background

The parties were married on May 1, 2004, and resided in Kanawha County. The marital home was the wife's separate property. The wife was a music teacher, and the husband's employment involved delivering parts for a transmission company. No children were born of the marriage. The parties lived modestly and acquired no significant assets.

During the marriage, both parties ceased working and were adjudicated disabled. In 2007, the husband was awarded disability benefits by the Department of Veterans Affairs for post traumatic stress disorder relating to his service in the Vietnam War. In May 2008, the husband was also awarded Social Security disability benefits. The wife had a history of psychiatric hospitalizations and, in September 2009, received a decision from the Social Security Administration finding her disabled as of December 2007 on the basis of a bipolar disorder.[1]

The date of the parties' separation was disputed and was ultimately determined by the family court to be May 22, 2009. The husband was 63 years of age, and the wife was 48 years of age.

## II.

### Procedural Background

In July 2009, the husband filed a petition for divorce in the Family Court of Kanawha County. The wife filed a responsive pleading seeking a divorce and asking for spousal support. The parties filed financial statements, and an evidentiary hearing was conducted by the family court on January 28, 2010. Both parties were represented by counsel.

On June 3, 2010, the family court granted the parties a divorce on the ground of irreconcilable differences and confirmed the wife's entitlement to sole ownership and possession of the marital home. Inasmuch as the parties had agreed upon the division of property and debts, only the issue of spousal support remained to be determined. In the latter regard, the family court's order set forth findings and conclusions pursuant to *W.Va. Code,* 48–6–301(b) [2001]. That section provides that the following shall be considered in awarding spousal support:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of article seven of this chapter, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive spousal support, child support or separate maintenance: Provided, That for the purposes of determining a spouse's ability to pay spousal support, the court may not consider the income generated by property allocated to the payor spouse in connection with the division of marital property unless the court makes specific findings that a failure to consider income from the allocated property would result in substantial inequity;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) Whether each party has foregone or postponed economic, education or employment opportunities during the course of the marriage;

(9) The standard of living established during the marriage;

(10) The likelihood that the party seeking spousal support, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(11) Any financial or other contribution made by either party to the education,

---

1. The wife's condition was described by her counsel to the family court as follows: "She taught school until she became disabled. She made minimal income even when she taught. She then began suffering from depression, and agoraphobia is only one matter—problem of an array of problems stemming from bipolar depression."

training, vocational skills, career or earning capacity of the other party;

(12) The anticipated expense of obtaining the education and training described in subdivision (10) above;

(13) The costs of educating minor children;

(14) The costs of providing health care for each of the parties and their minor children;

(15) The tax consequences to each party;

(16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(17) The financial need of each party;

(18) The legal obligations of each party to support himself or herself and to support any other person;

(19) Costs and care associated with a minor or adult child's physical or mental disabilities; and

(20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support, child support or separate maintenance.

Eliminating the subsections relating to minor children, the family court addressed the remaining statutory factors and determined that, whereas the post-separation income of the husband exceeded his living expenses, the opposite was true regarding the wife, *i.e.,* her expenses were more than her income. Specifically, the family court found that the husband's monthly income was $4,366.66 (consisting of $2,823.00 in disability from the Department of Veterans Affairs, $1,451.00 in Social Security disability and $92.66 in retirement benefits). His reasonable monthly living expenses were $3,304.38. The wife's income was $780.00 per month in Social Security disability benefits, and her reasonable monthly living expenses were $1,884.00.

Emphasizing that the length of the parties' marriage is not the exclusive factor and that it is unlikely that a significant change will occur in the parties' earning capacities, the family court directed the husband to pay

$1,000.00 per month in permanent spousal support ("not chargeable" to the Estate of the husband upon his death). The June 3, 2010, order concluded by stating that "the Court finds that the award of $1,000.00 per month alimony need not be paid out of the [husband's] veterans benefits."

In July 2010, the family court conducted a hearing on the husband's motion to reconsider the June 3, 2010, order. Agreeing that the husband's military disability benefits are not subject to direct attachment or allocation for spousal support, the parties contested whether the benefits could be considered in determining the amount of support to be received from the husband's other income.

On September 29, 2010, the family court denied the motion to reconsider and confirmed the $1,000.00 per month permanent spousal support award. The September 29 order stated that "it would not be equitable to fail to consider veteran's disability benefits available to the [husband] in determining spousal support."

The husband challenged the support award in the Circuit Court of Kanawha County. On December 13, 2010, the circuit court entered an order setting aside the $1,000.00 award of permanent spousal support and directing the husband to pay spousal support in the amount of $500.00 per month for 18 months. Although the order stated, as did the family court, that it would not be equitable to fail to consider the veterans disability benefits available to the husband in determining spousal support, the following reason was given for setting aside the decision of the family court:

[I]t is against public policy for the Family Court Judge to disregard the totality of the circumstances underpinning the particular disability awards in this case and then to consider these awards in an equitable way in lifetime spousal support for [a] four (4) year marriage.

The order of the circuit court is problematic in that it failed to address with any specificity the husband's veterans benefits or the parties' Social Security awards; nor did the order elaborate on the admonition that the circumstances underpinning the benefits and

the awards should have been considered by the family court. No discussion of those circumstances appears in the circuit court order. The circuit court did not determine that any of the factual findings of the family court were clearly erroneous. Finally, the order expressed no basis for the $500.00 amount or why it should be paid by the husband for no more than 18 months. It is unclear whether the modified spousal support was intended to be rehabilitative in nature. No determination in that regard appears in the order.

The wife now appeals from the December 13, 2010, order of the circuit court.

## III.

### Standard of Review

■■■ The standard of review pertaining to this appeal was set forth in the syllabus of *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004):

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl. pt. 1, *Hornbeck v. Caplinger*, 227 W.Va. 611, 712 S.E.2d 779 (2011); syl. pt. 1, *Palmer v. Justice*, 227 W.Va. 424, 710 S.E.2d 526 (2011).

■■■ On the latter point expressed in *Carr*, syllabus point 1 of *Burks v. McNeel*, 164 W.Va. 654, 264 S.E.2d 651 (1980), is worth noting: "In reviewing the judgment of a lower court this Court does not accord special weight to the lower court's conclusions of law, and will reverse the judgment below when it is based on an incorrect conclusion of law." Syl. pt., 2, *Miller, Comm'r v. Moredock*, 229 W.Va. 66, 726 S.E.2d 34 (2011); syl. pt. 1, *Foster v. Foster*, 196 W.Va.

341, 472 S.E.2d 678 (1996). Moreover, a circuit court may not substitute its findings of fact for those of a family court judge merely because it disagrees with those findings. *See*, syl. pt. 2, *In re: Robinson*, 212 W.Va. 632, 575 S.E.2d 242 (2002); syl. pt. 4, in part, *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995).

## IV.

### Discussion

■■■ In determining the appropriate amount of spousal support, the family court examined the relevant factors listed in *W.Va. Code*, 48–6–301(b) [2001]. Very few of those factors were mentioned by the circuit court. With regard to the husband's military disability benefits, the family court focused its attention on subsection (b)(3) of that statute which states that consideration shall be given to the "present employment income and other recurring earnings of each party from any source." That subsection and subsection (b)(20), which allows consideration of other "necessary and appropriate" factors, bring into view the interplay of two federal provisions: 10 U.S.C. § 1408 [2009] of the Uniformed Services Former Spouses' Protection Act and 38 U.S.C. § 5301 [2003] concerning Special Provisions Relating to Veterans Benefits. The first, § 1408, largely deals with the division of military retirement pay as marital property. The second, more pertinent, provision, § 5301, provides in subsection (a)(1) in part:

> Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.[2]

**2.** As a matter of clarification, this action concerns the husband's military disability benefits for post traumatic stress disorder relating to his service in Vietnam. It does not concern military retirement. *See, W.Va.Code,* 48–7–110 [2001]

(concerning military retirement pay and the division of marital property), and *W.Va.Code,* 48–8–106 [2001] (concerning military retirement pay and spousal support). In *Butcher v. Butcher,* 178 W.Va. 33, 357 S.E.2d 226 (1987), this Court held

As stated above, the parties are in agreement that the husband's military disability benefits are not subject to direct attachment or allocation for spousal support. The issue, however, is whether the benefits can be considered in determining the amount of support to be received by the wife from the husband's other income.

Subsection § 5301(a)(1) was discussed recently in *Urbaniak v. Urbaniak*, 2011 S.D. 83, 807 N.W.2d 621 (2011). During his service in the Army, the husband in *Urbaniak* sustained a wrist injury and developed post traumatic stress disorder. The parties were married after his discharge. No children were born of the marriage, and, after seven years, a divorce was granted on the ground of irreconcilable differences. The circuit court awarded the wife, found to be "able bodied," $500.00 per month in alimony for eight years. In granting the alimony, the circuit court considered both the husband's military disability benefits and his Social Security disability benefits.

Noting that the circuit court made detailed findings and conclusions on the relevant factors concerning alimony, the Supreme Court of South Dakota in *Urbaniak* affirmed the award. With regard to the military disability benefits, the Supreme Court stated:

Ike's [the husband's] disability benefits are exempt from attachment, levy, seizure, and taxation. 38 U.S.C. § 5301(a)(1). The trial court was therefore unable to attach Ike's disability benefits to pay an alimony award. Yet the court did not attach Ike's benefits but instead considered them in determining alimony. * * * An "overwhelming majority of courts" have held that VA disability payments may be considered as income in awarding spousal support. *In re Marriage of Morales*, 230 Or.App. 132, 214 P.3d 81, 85 (Or.Ct.App.

2009). These courts conclude that federal law does not prohibit an award of alimony against a spouse receiving military disability pay and, once alimony is awarded, federal law will not relieve the paying spouse from paying such alimony obligations, even if most of the veteran's income consists of military disability benefits.

807 N.W.2d at 626.[3]

In so ruling, the Supreme Court of South Dakota noted that the husband was not eligible for military retirement pay and, therefore, had not waived retirement pay in order to receive disability benefits. *See*, n. 2, *supra*. On that basis, the Court in *Urbaniak* distinguished *Ex parte Billeck*, 777 So.2d 105 (Ala.2000), relied on by the husband in the action now before us. *Ex parte Billeck* involved veterans disability payments paid in lieu of military retirement. Under *Billeck*, veterans disability benefits should not be considered in awarding alimony. The Court, in *Urbaniak*, also distinguished *Ex parte Billeck* on the basis that *Billeck* was contrary to the principle that only in exceptional circumstances should federal law preempt state domestic relations law. The *Urbaniak* opinion concludes: "Accordingly, we concur with the better view and adopt the rationale from the majority of jurisdictions that have found that no federal law demonstrates a clear intent to prohibit state courts from considering VA disability benefits when deciding alimony." 807 N.W.2d at 627.

This Court finds ample authority in other jurisdictions supportive of the reasoning in *Urbaniak*. *See, Clauson v. Clauson*, 831 P.2d 1257, 1264 (Alaska 1992) (Although not marital property, military disability benefits can be considered as affecting the financial circumstances of the parties); *In re the Marriage of Howell*, 434 N.W.2d 629, 633 (Iowa

that military nondisability retirement benefits are subject to alimony and child support payments and are marital property subject to division under this State's equitable distribution statute. *Smith v. Smith*, 190 W.Va. 402, 438 S.E.2d 582 (1993); *Chamberlain v. Chamberlain*, 181 W.Va. 468, 383 S.E.2d 100 (1989). Moreover, this action does not concern a waiver of military retirement pay in order to receive veterans disability benefits; nor does this action concern the enhancement of State retirement benefits through military service credits. *See, Gainer v. Gainer*,

219 W.Va. 654, 639 S.E.2d 746 (2006). *See generally*, Ann K. Wooster, Annotation, *Construction and Application of Federal Uniformed Services Former Spouse Protection Act in State Court Divorce Proceedings*, 59 A.L.R.6th 433 (2010).

3. The opinion in *In re Marriage of Morales* states that the Court of Appeals of Oregon agrees "with the overwhelming majority of courts that VA disability payments may be considered as income in awarding spousal support." 214 P.3d at 85.

1989) (citing former § 3101, now § 5301, and stating that military disability may be considered in the equitable granting of alimony or support.); syl. pt. 3, *In the Matter of the Marriage of Bahr*, 29 Kan.App.2d 846, 32 P.3d 1212 (2001) ("A district court may consider a military veteran's disability benefits when crafting a maintenance award for the veteran's spouse from the veteran's other property."); *Gillis v. Gillis*, 2011 Me. 45, 15 A.3d 720, 723 (2011) (The Uniformed Services Former Spouses' Protection Act "does not prevent the court from treating disability benefits as income for the purpose of determining a spouses' ability to pay support."); *Riley v. Riley*, 82 Md.App. 400, 571 A.2d 1261, 1266, *cert. denied*, 320 Md. 222, 577 A.2d 50 (1990) (VA disability benefits may be considered as a resource for purposes of determining a party's ability to pay alimony.); *Steiner v. Steiner*, 788 So.2d 771 (Miss. 2001) (A former husband's veterans disability income may be considered in determining an award of alimony.); *Parker v. Parker*, 335 Pa.Super. 348, 484 A.2d 168 (1984) (Service-connected disability benefits paid by the Veterans Administration can be considered in determining the amount of alimony *pendente lite* to be awarded.); *Repash v. Repash*, 148 Vt. 70, 528 A.2d 744, 745 (1987) (The federal anti-assignability, anti-attachment statute did not preclude consideration of veterans disability benefits "as a source of income upon which an award of alimony may be based."); *In re the Marriage of Weberg*, 158 Wis.2d 540, 463 N.W.2d 382, 384 (1990) (Military disability payments may be considered as a factor in assessing ability to pay spousal maintenance.).

The principles set forth in the above authorities are consistent with the statutory requirements in this State concerning the awarding of spousal support and with the separateness of such awards from the preclusive aspects of federal law. Accordingly, this Court holds that, in determining the amount of spousal support to be awarded pursuant to the factors enumerated in *W.Va.Code*, 48–6–301(b)(1)–(20) [2001], federal, service-connected veterans disability benefits received by the payor spouse may be considered by the family court as a resource, along with the payor's other income, in assessing the ability of the payor to pay spousal support. Such consideration by the family court is not precluded by 10 U.S.C. § 1408 [2009] of the Uniformed Services Former Spouses' Protection Act or 38 U.S.C. § 5301 [2003] concerning the nonassignability of veterans benefits.

In this action, the husband and wife agree that direct allocation of the husband's military disability benefits cannot be made for spousal support purposes. The husband contends, however, that those benefits should not even be considered. In addition to the authorities cited above, that contention is contradicted by the husband's further assertion that he consistently contributed to the household expenses with his veterans disability check until he left the marital home. The husband made that assertion before the family court, the circuit court and this Court. Thus, it is only fair to continue to consider those benefits under the circumstances herein.

As suggested above, the final order of the circuit court failed to address with any specificity the husband's veterans benefits or the parties' Social Security awards. The circuit court did not determine that any of the factual findings of the family court were clearly erroneous. Moreover, no basis appears in the record for the circuit court's decision that the husband should pay spousal support for no more than 18 months. The evidence of record demonstrates that rehabilitative, rather than permanent, support was not warranted. The family court found that it is unlikely that a significant change will occur in the parties' earning capacities. *See*, *W.Va.Code*, 48–6–301(b)(10) [2001]. With regard to the wife, the family court order denying the husband's motion to reconsider stated: "The preponderance of the evidence shows the [wife] became disabled from mental and emotional impairments during the marriage, and that the same continue to the present and prevent her employment[.]" The circuit court did not address those conclusions.

Moreover, the limitation to 18 months cannot be justified solely because the parties were only married a few years. *See, Porter v. Porter*, 212 W.Va. 682, 685, 575 S.E.2d 292,

295 (2002) (While the length of marriage is one of the factors which may be considered in determining spousal support, it is only one of many and not the exclusive factor.). Here, the length of the parties' marriage may be considered under *W.Va.Code*, 48–6–301(b)(1) [2001], in awarding spousal support, but, under the unique facts of this action, it cannot be the basis of rehabilitative spousal support.

The absence of a complete, final order from the circuit court addressing the issues raised by the parties and explaining its decision has undermined, and rendered defective, the appeal process from the family court. This Court is of the opinion, however, that, in the absence of a proper circuit court order, a reinstatement of the decision of the family court would be inappropriate under the circumstances. Instead, this action should be remanded to the circuit court for further proceedings.

## V.

### Conclusion

Upon all of the above, the December 13, 2010, order of the Circuit Court of Kanawha County is reversed. This Court remands this action to the circuit court for further proceedings consistent with this opinion and the entry of a final order addressing, with particularity, the findings, conclusions and award of the family court set forth by the family court in the orders entered on June 3, 2010, and September 29, 2010. Inasmuch as rehabilitative spousal support is not warranted in this action, the spousal support awarded shall be permanent in nature.

Reversed and Remanded.

WORKMAN, Justice, concurring, in part, and dissenting, in part:

I concur with the majority's holding and new syllabus that allows for federal, service-connected veterans disability benefits received by the payor spouse to be considered by the family court as a resource in assessing the ability of the payor to pay spousal support.[1]

I dissent, however, to the majority's decision to remand this case to the circuit court "for further proceedings and the entry of a final order addressing, with particularity, the findings, conclusions and award of the family court set forth by the family court in the orders entered on June 3, 2010, and September 29, 2010." The decision to remand the case to the circuit court, rather than simply to reverse the circuit court, goes against the grain of the well-established standard of review.

The appropriate standard of review as set forth by the majority is as follows:

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). Moreover, in reviewing orders entered by a family court judge, the majority correctly states that "a circuit court may not substitute its findings of fact for those of a family court judge merely because it disagrees with those findings. *See*, syl. pt. 2, *In re: Robinson*, 212 W.Va. 632, 575 S.E.2d 242 (2002); syl. pt. 4, in part, *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995)."

Under the guidance of the foregoing standard of review, the majority first determines that "[i]n the current action, the family court considered the husband's military disability benefits and his other sources of income in awarding the wife permanent spousal support." This determination by the family court is correct under the law enunciated by the majority in the new syllabus point. The majority next states that "[t]he final order of the circuit court, however, *failed to address* with any specificity how those disability benefits were taken into account in setting aside the family court decision." (Emphasis added). Given that the majority makes clear in a new syllabus point that consideration of

---

1. Interestingly, this isn't really the issue presented. Both the family court and the circuit court held that veterans disability benefits can be considered in determining spousal support.

716

disability benefits was proper and given that the majority affirms the family court's consideration of the husband's military disability benefits in awarding permanent spousal support, then why is it necessary to remand the case to the circuit court for its failure to address the issue with any specificity? The implication from this remand is that the majority does not like the family court's determination regarding the amount of spousal support and, therefore, is encouraging the circuit court, upon remand, to revise its order to make it (forgive the pun) "more appealing."

Even more significantly, the majority twice notes in the opinion that "[t]he circuit court *did not* determine that any of the factual findings of the family court were erroneous." (Emphasis added). Under the provisions of West Virginia Code § 51–2A–14(c) (2008), "[t]he circuit court shall review the findings of fact made by the family court judge under the clearly erroneous standard and shall review the application of law to the facts under an abuse of discretion standard." *See Deitz v. Deitz,* 222 W.Va. 46, 57, 659 S.E.2d 331, 342 (2008) (citing statute in considering whether the circuit court correctly reviewed family court's order). Thus, it is not the proper role of the circuit court to make new or revised findings of fact. Further, the family court followed the statute, explicitly setting forth the reasoning regarding each of the statutory criteria for awarding spousal support.

Like the circuit court, this Court also cannot substitute its findings of fact for the family court. *See Lee v. Lee,* 228 W.Va. 483, 721 S.E.2d 53 (2011) (Davis, J., dissenting) ("Because the majority has substituted its own judgment for that of the lower court[']s when neither the facts nor the law support such a result, I respectfully dissent."). The circuit court's order is devoid of any findings that the family court clearly erred in its factual determination. Moreover, a review of the family court's order reveals that the family court correctly applied the law regarding consideration of veterans disability benefits. Thus, under the well-established standard of review, it is clearly inappropriate to remand the case back to the circuit court to give it a second bite of the apple to explain why it reversed the family court's decision. The remand is simply not correct under our law relating to the standard of review, and the circuit court should not get a do-over.

For the foregoing reasons, I respectfully concur in the new law enunciated by the majority, but dissent in the majority's decision to reverse and remand to the circuit court, rather than simply reverse the circuit court's decision.