453 S.E.2d 598

**Betty Ruth ODLE, Formerly Betty Ruth Eastman, Plaintiff Below, Appellant,**

**v.**

**George EASTMAN, Defendant Below, Appellee.**

**No. 22207.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 1, 1994.

Decided Dec. 8, 1994.

Virginia proceeding pursuant to West Virginia Code § 33–6–31(d) and not by forum shopping, as appears to be the case here.

Thomas C. Evans, III, Adams, Fisher & Evans, Ripley, for appellant.

George Eastman, pro se.

PER CURIAM:

This case is before this Court upon the appeal of Betty Ruth Eastman (now Odle) (hereinafter "appellant") from a September 7, 1993, order of the Circuit Court of Roane County, which adopted the recommended decision of the family law master with the exception of the family law master's designation of certain real property as "separate property" belonging to the appellant. The circuit court found this real property to be "marital property" and subject to distribution between the parties. In light of this decision, the circuit court recommitted the case to the family law master for a recalculation of the martial estate. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel and the appellee, George Eastman, who appeared pro se. For the reasons stated below, the judgment of the circuit court is reversed insofar as it recommitted the case to the family law master for a recalculation of the marital estate.

## I

The appellant was married to her first husband, William A. Odle, for twenty-five years. Upon Mr. Odle's death in 1978, the appellant became entitled to: (1) survivor's pension benefits, payable during the appellant's lifetime, from Mr. Odle's employer, E.I. DuPont, Inc., in the amount of $670 per month and (2) income from the William A. Odle testamentary trust, established pursuant to Mr. Odle's will. In October, 1991, the time of the parties' separation, the appellant received $916 per month from this trust, which also made the mortgage payments on her home.[1]

The facts herein are not in dispute. The appellant married George Eastman (hereinafter "appellee") in 1981 [2] and they divorced in 1993.[3] In 1983, during her marriage to the appellee, the appellant purchased 119 acres of real estate from her parents,

---

1. The family law master found that this testamentary trust, which was funded with stocks, money and insurance, had a market value of $281,670.76, in November, 1991. The appellant's only interest in the trust is that of income beneficiary for her lifetime. The assets are otherwise unavailable to her.

2. This was the appellant's second marriage and the appellee's fifth.

3. By order of August 5, 1992, the divorce proceeding was bifurcated and the parties were awarded a divorce and the appellant was restored to her previous married name. The family law master's recommended decision of February 8, 1993 determined the issue of the parties' marital property and debts, alimony, injunctive relief and assessment of court costs.

Charles and Jane Thrash.[4] The purchase of the real estate was financed by the appellant's parents and the $50,000 purchase price was payable in installments over ten years.[5] The title to the real estate has always been titled solely in the appellant's name. Furthermore, the payments of both the principal and interest on the real estate have been paid, by the appellant, with the income from the DuPont survivor's pension benefits and the William A. Odle testamentary trust described above. Neither the principal nor the interest of the real estate has ever been paid with the wages of either the appellant or the appellee or with the separate estate of the appellee.

In the family law master's recommended decision, the 119 acres purchased by the appellant is designated as her "separate property" and not subject to distribution between the parties. The family law master determined that:

4. This real estate adjoins other property owned by the appellant, which was purchased prior to her marriage to the appellee.

5. At the time of the parties' separation, there remained a balance of $11,050 due on the real estate.

6. See W.Va.Code, 48A–4–20 [1993].

7. W.Va.Code, 48–2–1(f) [1992] defines "separate property" as:

(1) Property acquired by a person before marriage; or

(2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage; or

(3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage; or

(4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution; or

(5) Property acquired by a party during a marriage but after the separation of the parties and before the granting of a divorce, annulment or decree of separate maintenance; or

(6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this subsection which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

8. W.Va.Code, 48–2–1(d) [1992] defines "income" as including, but not limited to, the following:

Although the land was acquired during the marriage and it was used for marital purposes, it is 'separate property' because the [appellant] acquired it by the exchange of her separate assets owned prior to the marriage, which the [appellee] acknowledges in his pleadings, his testimony, and by his exhibits. There is no credible evidence that the labor and separate funds of the [appellee] increased the market value of this real estate.

The appellee sought review of the family law master's recommended decision in the Circuit Court of Roane County.[6] The circuit court adopted the family law master's recommended decision with the exception of the classification of the 119–acre tract as the appellant's "separate property."[7] In its opinion letter of August 12, 1993, the circuit court concluded that the appellant purchased the land utilizing her "income,"[8] and, therefore, the land was "marital property,"[9] sub-

(1) Commissions, earnings, salaries, wages and other income due or to be due in the future to an individual from his employer and successor employers;

(2) Any payment due or to be due in the future to an individual from a profit-sharing plan, a pension plan, an insurance contract, an annuity, social security, unemployment compensation, supplemental employment benefits, workers' compensation benefits, state lottery winnings and prizes, and overtime pay;

(3) Any amount of money which is owing to an individual as a debt from an individual, partnership, association, public or private corporation, the United States or any federal agency, this state or any political subdivision of this state, any other state or a political subdivision of another state, or any other legal entity which is indebted to the obligor.

Furthermore, "earnings" is defined in W.Va. Code, 48–2–1(c) [1992] as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program."

9. W.Va.Code, 48–2–1(e) [1992] defines "marital property" as:

(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint ten-

ject to distribution between the parties.[10]

With little explanation, the circuit court disregarded the family law master's finding that the funds with which the appellant purchased the real estate were her "separate assets owned prior to the marriage."[11]

## II

The appellant's only assignment of error is that the circuit court erred in failing to adopt that portion of the family law master's recommended decision which found the 119–acre tract to be the appellant's "separate property" and, thus, not subject to equitable distribution. We agree with the appellant's contention and conclude that the real estate is her "separate property," and therefore, not part of the marital estate.

■ As we indicated above, the appellant purchased the 119–acre tract with money she received from survivor's pension benefits from her first husband's employer and from a testamentary trust established pursuant to her first husband's will. The appellee paid nothing towards the purchase of the property. Furthermore, the real estate was purchased from and financed by the appellant's parents and, from the date of purchase,

was titled solely in the appellant's name. In syllabus point 3 of *Hamstead v. Hamstead,* 184 W.Va. 272, 400 S.E.2d 280 (1990), we held:

> When an individual during marriage has property which is separate property within the meaning of *W.Va.Code,* 48–2–1(f), and then exchanges that property for other property which is titled in his name alone, and which is not comingled with marital property, then that other property acquired as a result of the exchange is itself separate property.

The applicability of this rule of law to the present case ultimately depends upon our determination of whether the funds used to purchase the real estate were the appellant's "separate property" or, as the circuit court concluded, property which belonged to the marital estate.

■ We disagree with the circuit court's finding that the monthly payments the appellant received, during her marriage to the appellee, from the survivor's pension benefits and the testamentary trust were "income," as that term is defined in *W.Va.Code,* 48–2–1(d)(2) [1992].[12]

ancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property shall not include separate property as defined in subsection (f) of this section; and

   (2) The amount of any increase in value in *the separate property of either of the parties to a marriage,* which increase results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage.

10.  *W.Va.Code,* 48–2–32 [1984] provides, in relevant part: "(a) Except as otherwise provided in this section, upon every judgment of annulment, divorce or separation, the court shall divide the marital property of the parties equally between the parties."

11.  The circuit court's opinion letter of August 12, 1993 states, in relevant part:

   Did the payments made by Betty Odle for the property in question, payments made from income she was receiving from a trust estab-

lished by her late husband, W.A. Odle, and other survivor's pension from DuPont constitute an exchange of separate property which was acquired before the marriage [§ 48–2–1(f)(2)] or was it simply a purchase by a spouse utilizing her income?

   . . . .

   The Court is of the opinion that the monies received by the plaintiff, Betty Odle, from the W.A. Odle Testamentary Trust and the E.I. DuPont Survivor's pension were income as defined in § 48–2–1(d)(2) of the West Virginia Code. Such income was used by the plaintiff, Betty Odle, to purchase 119 acres of land during her marriage to the defendant, George Eastman. The 119 acre tract of land then became marital property. The plaintiff has argued that this property was purchased in her name and that the defendant did not contribute to it. These issues are addressed in § 48–2–1(e)(1) of the West Virginia Code. The Court has also perused and considered the Hamstead and Rogers cases cited by the Plaintiff's attorney and am [sic] not persuaded by these cases that the purchase of the 119 acres was an exchange of property as described in West Virginia Code § 48–2–1(f)(2).

12.  *See* n. 8, *supra.*

The appellant received payments from both the survivor's pension benefits and the testamentary trust strictly by virtue of her marriage to her first husband. These payments were, in no way, related to her marriage to the appellee. She became entitled to payments therefrom upon her first husband's death in 1978, three years *before* her marriage to the appellee. Under *W.Va.Code*, 48–2–1(f)(1) [1992], these payments are "separate property," which is defined as "[p]roperty acquired by a person before marriage[.]" The fact that the appellant received payments from the pension benefits and the testamentary trust on a monthly basis *during* her marriage to the appellee does not alter their status as "separate property."

In summary, then, we conclude that the payments the appellant received, during her marriage to the appellee, from the survivor's pension benefits and the testamentary trust, were her "separate property," as determined by the family law master. She exchanged this separate property for 119 acres of land, titled it in her name alone and did not comingle it with marital property. The 119 acre tract of land is, therefore, "separate property" as well, and not subject to equitable distribution. *Hamstead v. Hamstead, supra.*

### III

When a circuit judge desires to alter the conclusions and findings of a family law master's recommended order, it must do so under the constraints of *W.Va.Code*, 48A–4–20(c) [1993]. In syllabus point 1 of *Higginbotham v. Higginbotham*, 189 W.Va. 519, 432 S.E.2d 789 (1993), this Court stated:

*W.Va.Code*, 48A–4–10(c) [1990] [now *W.Va.Code*, 48A–4–20(c) [1993]] [13] limits a circuit judge's ability to overturn a family

law master's findings and conclusions unless they fall within one of the six enumerated statutory criteria contained in this section. Moreover, rule 52(a) of the West Virginia Rules of Civil Procedure requires a circuit court which changes a family law master's recommendation to make known its factual findings and conclusions of law.

(footnote added). The family law master's determination that the 119–acre tract of land purchased by the appellant during her marriage to the appellee was "separate property" did not fall into one of the six enumerated criteria set forth in *W.Va.Code*, 48A–4–20(c) [1993].

'In reviewing the judgment of a lower court this Court does not accord special weight to the lower court's conclusions of law, and will reverse the judgment below when it is based on an incorrect conclusion of law.' Syl. pt. 1, *Burks v. McNeel*, [164] W.Va. [654], 264 S.E.2d 651 (1980).

Syl. pt. 1, *Pierce v. Pierce*, 166 W.Va. 389, 274 S.E.2d 514 (1981).

The circuit court incorrectly concluded that the real estate was "marital property" under *W.Va.Code*, 48–2–1(e) [1993] and subject to distribution between the parties. Accordingly, the judgment of the circuit court, insofar as it recommitted the case to the family law master for "recalculation" of the marital estate, is hereby reversed.

Reversed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

13. *W.Va.Code*, 48A–4–20(c) [1993] reads as follows:

The circuit court shall examine the recommended order of the master, along with the findings and conclusions of the master, and may enter the recommended order, may recommit the case, with instructions, for further hearing before the master or may, in its discretion, enter an order upon different terms, as the ends of justice may require. The circuit court shall not follow the recommendation, findings and conclusions of a master found to be:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in conformance with the law:

(2) Contrary to constitutional right, power, privilege or immunity;

(3) In excess of statutory jurisdiction, authority or limitations or short of statutory right;

(4) Without observance of procedure required by law;

(5) Unsupported by substantial evidence; or

(6) Unwarranted by the facts.