639 S.E.2d 746

Mary Ellen GAINER, Petitioner Below, Appellee,

v.

John David GAINER, Respondent Below, Appellant.

No. 33065.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 20, 2006.

Decided: Nov. 14, 2006.

Harvey D. Peyton, Esq., The Peyton Law Firm, Nitro, for Appellant.

Charles L. Phalen, Jr., Esq., Shawn D. Bayliss, Esq., Bayliss & Phalen, PLLC, Charleston, for Appellee.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Putnam County entered on September 13, 2005. In that order, the circuit court refused to consider an appeal of an order of the Family Court of Putnam County filed by the appellant and respondent below, John David Gainer, regarding the equitable distribution of his pension benefits as a result of his divorce from the appellee and plaintiff below, Mary Ellen Gainer. In this appeal, Mr. Gainer contends that the family court erred by failing to make a finding regarding the value of his pension benefits at the time the parties separated. He further contends that the court erred by finding that his law enforcement and firefighter annuity is marital property subject to equitable distribution. Likewise, he maintains that the court erred by finding that the credit to his retirement benefits as a result of his premarital military service is marital property.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is affirmed, in part, reversed, in part, and this case is remanded to the circuit court with directions to enter an order remanding the case to the family court for further proceedings consistent with this opinion.

## I.

### FACTS

John David Gainer and Mary Ellen Gainer were married on August 20, 1977, and separated on June 9, 2001. At the time of marriage, Mr. Gainer was employed by the West Virginia Department of Public Safety as a state policeman. He had no vested interest in any retirement plan. In January 1984, Mr. Gainer accepted employment as a deputy United States marshal. He became a participant in the basic federal Civil Service Retirement System (hereinafter "CSRS"). As a CSRS participant, Mr. Gainer could not contribute to the social security system. However, he was able to apply credit for his premarital military service [1] to the end of his period of CSRS years in service, provided that he worked a full twenty years under the CSRS system and paid into the system a sum of $1,976.00. Mr. Gainer paid this sum into the system shortly after he became a deputy United States marshal.

During the marriage, Ms. Gainer was employed at a telephone company.[2] She earned

---

1. Prior to his marriage, Mr. Gainer enlisted in the United States Navy. He was a member of the military for 5 years, 11 months, and 16 days and was honorably discharged in May 1976. At the time of his discharge, Mr. Gainer had no vested interest in any form of military retirement.

2. When Ms. Gainer began working for the telephone company on August 3, 1979, it was known

credits toward a vested private pension and also contributed to the social security system. At the time of the parties' separation, Ms. Gainer had worked for the telephone company for twenty-one years and ten months. Mr. Gainer had been employed as a deputy United States marshal for seventeen and one half years.

Shortly after the parties separated, Ms. Gainer filed for divorce. On January 19, 2005, the Putnam County Family Court entered an order that granted the parties a divorce and divided the marital estate. On April 7, 2005, Mr. Gainer filed an appeal with the circuit court. Ms. Gainer cross-petitioned for appeal on April 25, 2005. One of the issues raised upon appeal was the division of the parties' retirement benefits.[3] The family court determined that Mr. Gainer's military time which was "purchased" during the marriage to add to his CSRS pension was marital property. The family court order noted that the parties had presented expert opinions regarding the present value of their pensions which were very different and could not be reconciled. The court further stated that since neither party had sufficient assets to purchase the value of the other's pension, the most appropriate method to divide the pensions was by qualified order. Accordingly, the parties were directed to prepare a qualified order to divide their pensions.

On appeal, the circuit court determined that the family court did not err by finding that Mr. Gainer's premarital military service credits were marital property. However, the court found that the family court erred by failing to place a present day value on Mr. Gainer's CSRS pension. Further, the family court had failed to determine whether or not Mr. Gainer's law enforcement and firefighter annuity[4] was marital property. Accordingly, the case was remanded to the family court by order entered June 16, 2005.

On remand, the family court found that division of the parties' pensions by lump sum payments was not practical because the size of Mr. Gainer's benefits could not be offset by other assets. The court determined that the best method to divide the parties' pensions was the "present division method of deferred distribution" whereby, upon retirement, a fixed percentage of each pension shall be distributed to each spouse. The family court then set forth the method to divide the pensions as follows:

a. The parties were married on August 20, 1977 and separated on June 9, 2001;

b. In Ms. Gainer's financial disclosure, she indicates that she became employed at Verizon on August 3, 1979;

c. On the attached document, Mr. Gainer's hiring date for CSRS is December 27, 1983;

d. Accordingly, Ms. Gainer had 21 years and 310 days at Verizon at separation and Mr. Gainer had 17 years and 164 days with the U.S. Marshal at separation, plus an additional 2165 days of military service purchased with marital funds;

e. Mr. Gainer is entitled to the following portion of Ms. Gainer's retirement at Verizon, once she retires: monthly benefit divided by 2, multiplied by the product of 7981 days (21 years & 310 days, including leap years) divided by the total number of days credited service. For example, if Ms. Gainer retires after exactly 30 years of credited service, the multiplier will be 7981 divided by 10958 (number of days in 30 years, including leap years from August 3, 1979) or .7283. If her pension is $1500 per month, Mr. Gainer is entitled to $546.23 per month;

f. Ms. Gainer is entitled to the following portion of Mr. Gainer's retirement from CSRS, once he retires: monthly ben-

as the Chesapeake & Potomac. It later became Bell Atlantic and finally, Verizon.

**3.** The parties asserted additional errors with regard to the January 19, 2005, family court order. However, those issues were ultimately resolved below. Since the distribution of Mr. Gainer's pension benefits is the only issue presently before this Court, we will limit our discussion of the orders below accordingly.

**4.** The CSRS provides an annuity that enhances the retirement benefit of law enforcement personnel after twenty years of vested service in the system, excluding any credits for military service. Mr. Gainer was not vested in the basic law enforcement and firefighter annuity at the time the parties separated because he only had seventeen and one half years of service.

efit divided by 2, multiplied by the product of 8539 divided by the total number of days of credited service. If Mr. Gainer is not credited with his prior military service that is pre-marital and 2165 days shall be subtracted. The Court could not find any information as to the fate of any retirement benefits accrued while Mr. Gainer was serving with the W.Va. State Police, but the Court's ruling applies to it as well, in whatever manifestation, if any.

The family court also found that Mr. Gainer's law enforcement and firefighter annuity was marital property because it is merely an enhancement to his pension benefits. The family court order was entered on July 15, 2005. Thereafter, Mr. Gainer filed an appeal with the circuit court. The appeal was refused on September 13, 2005. This appeal followed.[5]

## II.

## STANDARD OF REVIEW

In *Carr v. Hancock*, 216 W.Va. 474, 476, 607 S.E.2d 803, 805 (2004), this Court explained that:

This Court's standard of review for an appeal from a circuit court that reviewed a family court's final order, or refused to consider a petition for appeal to review a family court's final order, is the same. In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

*See* W.Va.Code § 51-2A-15(b) (2001). With these standards in mind, we now consider the issues presented in this case.

**5.** The distribution of Ms. Gainer's retirement benefits is not an issue in this appeal.

**6.** Syllabus Point 1 of *Whiting* provides that,
Equitable distribution under W.Va.Code, 48-2-1, *et seq.*, is a three-step process. The first

## III.

## DISCUSSION

Mr. Gainer first contends that the family court erred by failing to determine the present value of his pension. Mr. Gainer does not dispute that the seventeen and one half years of service credited toward his CSRS retirement benefits earned during the course of his marriage prior to separation is a marital asset subject to equitable distribution. He contends, however, that the family court had a duty to put a value on this marital asset as part of the three-step process for equitable distribution set forth in *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990).[6] He maintains that the family court cannot complete equitable distribution until this step of the process is complete.

In Syllabus Point 4 of *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987), this Court found that, "Although *W. Va.Code*, 48-2-1 [1984] and *W. Va.Code*, 48-2-32 [1984] did not specifically mention pension plans as marital property available for equitable distribution, these two *Code* sections were broad enough to encompass pension plans." In other words, "[i]t is well-settled that a spouse's entitlement to pension or retirement benefits must be considered a marital asset in the equitable distribution of marital property." *Smith v. Smith*, 190 W.Va. 402, 404, 438 S.E.2d 582, 584 (1993).

With respect to pension benefits, this Court has held that the burden of proof is upon both parties to present evidence concerning the value thereof for equitable distribution purposes. In that regard, Syllabus Point 3 of *Roig v. Roig*, 178 W.Va. 781, 364 S.E.2d 794 (1987), states, "When the issue in a divorce proceeding is the equitable distribution of marital property, both parties have the burden of presenting competent evidence to the trial court concerning the value of such property."

step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va. Code, 48-2-32.

In this case, the record shows that both parties did in fact present expert testimony concerning the value of their pension benefits. However, because the opinions varied so greatly, the family court did not reach a conclusion as to the present value of the pension benefits. The parties appealed the decision, and, the circuit court remanded for a present value determination. Again, the family court did not make a present value determination but instead, chose to divide the pension benefits by applying the "present division method of deferred distribution" set forth in Syllabus Point 5 of *Cross*, whereby upon retirement, a fixed percentage of each pension shall be distributed to each spouse.

■ In *Cross*, this Court recognized that "[t]here is no fool-proof, scientific method regularly used by courts to divide retirement or pension benefits that have vested but not yet matured." 178 W.Va. at 568, 363 S.E.2d at 454. This is true because every pension plan is different. After considering guidelines set forth by other jurisdictions for dividing pensions plans, we set forth the method to be employed by our courts in Syllabus Point 5 of *Cross* as follows:

When a court is required to divide vested pension rights that have not yet matured as an incident to the equitable distribution of marital property at divorce, the court should be guided in the selection of a method of division by the desirability of disentangling the parties from one another as quickly and cleanly as possible. Consequently, a court should look to the following methods of dividing pension rights in this descending order of preference unless peculiar facts and circumstances dictate otherwise: (1) lump sum payment through a cash settlement or offset from other available marital assets; (2) payment over time of the present value of the pension rights at the time of divorce to the non-working spouse; (3) a court order requiring that the non-working spouse share in the benefits on a proportional basis when and if they mature.

In doing so, we noted that, "the least satisfactory method of dividing a pension is to allocate part of it to the non-working spouse to be collected when and if the benefits are paid." *Cross*, 178 W.Va. at 569, 363 S.E.2d at 455. At the same time, we recognized that,

"where other assets for equitable distribution are inadequate or lacking altogether, or where no present value can be established and the parties are unable to reach agreement, resort must be had to a form of deferred distribution based upon fixed percentages. In such event, the trial judge must determine how best to accomplish equitable distribution of all distributable property including, as appropriate, the sharing in fixed percentages of the pension payments when received."

*Id.*, quoting *Kikkert v. Kikkert*, 177 N.J.Super. 471, 427 A.2d 76, 80 (1981).

More recently, in *McGee v. McGee*, 214 W.Va. 36, 585 S.E.2d 36 (2003), we again discussed the different categories of valuation and distribution of pension benefits, in particular, the present value method, also called the immediate offset method, and the present division method of deferred distribution. We explained that " 'the present-value offset distribution method is only appropriate when there are sufficient other marital assets against which to offset the non-pensioner's equitable distribution interest in the pension, or sufficient income available to facilitate a reasonable buy-out of the non-pensioner spouse's interest.' " *McGee*, 214 W.Va. at 43, 585 S.E.2d at 43, quoting *Risoldi v. Risoldi*, 320 N.J.Super. 524, 727 A.2d 1038, 1046 (1999). When this method is utilized, the present value of the pension benefits is determined and an immediate payout is required.

By contrast, when deferred distribution is utilized, calculation of the present value is unnecessary. We explained why this is so in *McGee*, by quoting the court's explanation in *Tirmenstein v. Tirmenstein*, 539 N.E.2d 990, 993 (Ind.Ct.App.1989):

"Here, the present value is irrelevant. The trial court chose not to give Bette an immediate right to receive some portion of the present value of Robert's pension benefit, either in a lump sum or over a period of years. In other words, the trial court did not divide the present value of Robert's pension. Instead, Bette was given the

right to receive a percentage of what Robert receives when he receives it . . ." 214 W.Va. at 43, 585 S.E.2d at 43. We concluded in *McGee* that "trial courts must be provided with discretion regarding the method of distribution most appropriate in any given set of factual circumstances." 214 W.Va. at 45, 585 S.E.2d at 45.

■ In the case *sub judice*, the family court found that the present division method of deferred distribution was the best method to divide the parties' pension benefits because there was not sufficient marital assets to offset the size of Mr. Gainer's pension benefits, nor did he have sufficient income to buy-out Ms. Gainer's share. Upon review of the record, we are unable to conclude that the family court abused its discretion by choosing this method of distributing the parties' pension benefits.[7] Furthermore, contrary to Mr. Gainer's contention, we do not believe that the family court's decision is inconsistent with the equitable distribution process outlined by this Court in *Whiting, supra*. While no present value was placed on Mr. Gainer's pension, the court was still able to complete the equitable distribution process by awarding a fixed percentage of the pension benefits to be distributed when such benefits mature. Accordingly, we find no merit to Mr. Gainer's argument.

■ Next, Mr. Gainer contends that the circuit court erred by awarding Ms. Gainer part of his law enforcement and firefighter annuity. Pursuant to the family court's order, Ms. Gainer will be entitled to a fixed percentage of his CSRS pension including the law enforcement and firefighter annuity at the date of Mr. Gainer's mandatory retirement in October 2007. Mr. Gainer maintains that awarding Ms. Gainer pension benefits earned by him after their date of separation is contrary to this Court's prior holdings. *Citing Claypoole v. Claypoole*, 204 W.Va. 46, 511 S.E.2d 457 (1998).

Upon review, we find *Claypoole* distinguishable from the present case. In *Clay-poole*, the lower court ordered a 50/50 split of Mr. Claypoole's pension benefits when they became payable after Mr. Claypoole's retirement. Essentially, the court deferred distribution of the pension but failed to divide the future benefits on a proper proportional basis. As a result, Ms. Claypoole would have been collecting pension benefits earned by Mr. Claypoole after the parties' separation. That is not the case here.

■ As noted by the family court, the annuity at issue in this case is merely an option available to certain federal employees whereby retirement benefits are enhanced but military service is no longer included. In Syllabus Point 6 of *McGee*, we held that,

To achieve the final division of retirement benefits when utilizing the deferred distribution method, post-separation enhancements are allocated between the employee spouse and the non-employee spouse. The amount of benefits to which the non-employee spouse is entitled is calculated by multiplying the fixed percentage of retirement benefits by the coverture fraction.[8]

(Footnote added). The reasoning for allocating post-separation enhancements between the spouses is simple. " 'If the non-employee spouse must bear the risks attendant to waiting [for distribution], then the nonemployee should share in increased benefits that accrue during the delay.' " *McGee*, 214 W.Va. at 44, 585 S.E.2d at 44, *quoting In re Marriage of Hunt*, 909 P.2d 525, 536 (Colo.1995). The family court's decision in this case is consistent with this Court's holdings in *McGee*. Accordingly, we find no error.

■ Finally, Mr. Gainer contends that his military service credits are not marital property. As set forth above, Mr. Gainer was in the Navy prior to his marriage to Ms. Gainer. When Mr. Gainer became a United States marshal, he was able to "purchase" his military time to increase his retirement benefits. He did so, at a cost of $1,976.00. The

---

7. The record indicates that Ms. Gainer's expert opined that the value of Mr. Gainer's pension at the date of separation was $305,602.00 while Mr. Gainer's expert testified that the value was $126,519.17.

8. "The coverture fraction is the ratio of the number of years of employment during the marriage prior to the separation of the parties to the total number of years the employee spouse has been employed under the pension plan being addressed." Syllabus Point 7, *McGee*.

circuit court found that the increase to Mr. Gainer's pension benefits as a result of his military service was marital property since marital funds were used to "purchase" the time. Mr. Gainer contends, however, that since he served in the military prior to his marriage, any retirement benefits that he is entitled to receive as a result thereof must be classified as his sole and separate property. We agree.

■ W.Va.Code § 48–1–237 (2001) defines "separate property" as including "[p]roperty acquired by a person before marriage" and "[p]roperty acquired by a person during marriage in exchange for separate property which was acquired before the marriage." This Court has held that,

> "When an individual during marriage has property which is separate property within the meaning of *W. Va.Code*, 48–2–1(f) [now W.Va.Code § 48–1–237], and then exchanges that property for other property which is titled in his name alone, and which is not comingled with marital property, then that other property acquired as a result of the exchange is itself separate property." Syl. pt. 3, *Hamstead v. Hamstead*, 184 W.Va. 272, 400 S.E.2d 280 (1990).

Syllabus Point 1, *Odle v. Eastman*, 192 W.Va. 615, 453 S.E.2d 598 (1994).

■ In this case, Mr. Gainer was in the military prior to his marriage. Therefore, any benefits he received as a result thereof were his separate property. During the parties' marriage, Mr. Gainer was able to "purchase" his military time to increase his retirement benefits. Essentially, Mr. Gainer was able to enhance his pension benefits by exchanging "separate property" he acquired prior to his marriage. Therefore, we believe that Mr. Gainer's military service credits must be deemed separate property. However, since, Mr. Gainer used marital funds to "purchase" his military time to increase his pension benefits, we believe that Ms. Gainer is entitled to reimbursement for her portion of the marital funds, i.e., $988.00.

Having found that the enhancement to Mr. Gainer's pension benefits as a result of the purchase of his military service is his separate property, we remand this case to the circuit court with directions to remand this case to the family court to enter a new order with regard to the distribution of Mr. Gainer's pension benefits. The order should also direct Mr. Gainer to reimburse Ms. Gainer for her half of the marital funds used to acquire his military service credits.

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order dated September 13, 2005, is affirmed, in part, reversed, in part, and this case is remanded to the Circuit Court of Putnam County with directions to enter an order remanding this case to the Family Court of Putnam County for further proceedings consistent with this opinion.

Affirmed, in part, Reversed, in part, and Remanded with Directions.