# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2020

Lyle W. Cayce
Clerk

No. 19-40341

ROGER HAWES,

> Plaintiff - Appellant

v.

WILLIAM STEPHENS; BRAD LIVINGSTON; PAMELA PACE,

> Defendants - Appellees

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ROGER HAWES,

> Plaintiff - Appellant

v.

WILLIAM STEPHENS, Director, Texas Department of Criminal Justice,
Correctional Institutions Division; BRAD LIVINGSTON, Executive Director,
Texas Department of Criminal Justice, Correctional Institutions Division;
PAMELA PACE, Practice Manager, University of Texas Medical Branch;

> Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas

Before SMITH, GRAVES, and HO, Circuit Judges.

JAMES E. GRAVES, Jr., Circuit Judge:

No. 19-40341

Plaintiff-Appellant Roger Hawes, who is currently incarcerated in Texas, contends that various employees of the Texas Department of Criminal Justice violated federal law when they deducted a medical co-payment from his inmate trust account. We disagree and affirm the district court's grant of summary judgment in favor of the defendants.

## I. BACKGROUND

Title 38 U.S.C. § 5301(a) ("Section 5301(a)") states that payments of veteran's benefits "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever." 38 U.S.C. § 5301(a)(1). Veterans Affairs ("VA") payments protected under Section 5301(a) are covered by 31 C.F.R. § 212 ("Section 212"), which was enacted in 2011 to "implement statutory provisions that protect [f]ederal benefits from garnishment." 31 C.F.R. §§ 212.1, 212.2(b)(2). Both Section 5301(a) and Section 212 are at issue in this case.

As noted above, Plaintiff-Appellant Roger Hawes ("Mr. Hawes"), who is proceeding *pro se*, is incarcerated in Texas. In December 2015, $100 was deducted from his inmate trust as a copay for his medical care.[1] Mr. Hawes, who receives regular payments from the VA, believes this deduction violated Section 5301(a) and Section 212.

After pursuing grievances regarding the deduction, Mr. Hawes filed the instant suit. He named as defendants two directors of the Texas Department of Criminal Justice ("TDCJ") (together, the "TDCJ defendants") and Pamela Pace, a University of Texas Medical Branch practice manager (collectively, "Defendant-Appellees"). Mr. Hawes alleged that the TDCJ defendants violated Section 5301(a) by garnishing protected funds to satisfy his medical

---

[1] An annual $100 medical copayment is collected from inmates pursuant to Texas law. *See* Tex. Gov't Code § 501.063.

copayment, failed to implement institutional policies to identify prisoners who received funds exempt from levy or garnishment, and engaged in a conspiracy to convert funds belonging to him and thereby committed theft.[2]  He also complained that Defendant Pace failed to fulfill her duty to properly and thoroughly investigate his grievances and that the TDCJ grievance process denied him due process. He sought injunctive and declaratory relief, reimbursement of the $100 copayment, and compensatory damages.

The magistrate judge issued a report and recommendation granting summary judgment in favor of Defendant-Appellees, which the district court adopted. This appeal followed.

## II. DISCUSSION

### A. 42 U.S.C. § 1983 and Section 5301(a)

The magistrate judge found that Section 5301(a) may be enforced by private suit pursuant to 42 U.S.C. § 1983. The defendants did not object to that finding, presumably because the magistrate ultimately ruled in their favor on the merits. There is therefore no need for us to reach the issue of whether Mr. Hawes can sue under Section 1983. Review of an un-objected legal conclusion from a magistrate is for plain error. *See Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017). Affirmance on the merits is proper, as explained below, so any error on this point could not have been plain. We therefore assume *arguendo* that Section 5301(a) may be privately enforced through Section 1983 and proceed.

---

[2] Mr. Hawes argues that the theft of his property violated federal law because it involved property transferred through the mail or through federal wire transfer of U.S. Treasury funds.

## B. Section 5301(a) and the Medical Copayment

Mr. Hawes contends that the district court erred in concluding that the TDCJ defendants did not violate Section 5301(a) when they used funds in his inmate trust account, some of which were received as VA benefit payments, to satisfy his medical copay. While we do not endorse the analysis of the magistrate judge or district court, we find that they were correct in granting summary judgment in favor of Defendant-Appellees on this point.

This court reviews a grant of summary judgment de novo, applying the same standard as the district court. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017); *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin*, 864 F.3d at 328 (internal quotation marks and citation omitted). All facts and reasonable inferences are construed in favor of the nonmovant, and the court should not weigh evidence or make credibility findings. *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009). The resolution of a genuine issue of material fact "is the exclusive province of the trier of fact and may not be decided at the summary judgment stage." *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 n.3 (5th Cir. 2002).

Here, Mr. Hawes asserts that the TDCJ defendants violated Section 5301(a) and Section 212[3] by deducting the $100 medical copayment from his

---

[3] In addition to his other claims, Mr. Hawes asserts that the TDCJ defendants violated his procedural due process rights by failing to comply with the procedures set out in Section 212. But the regulations, which set out procedures for financial institutions to follow with regard to a garnishment order against an account holder into whose account a federal benefit payment has been directly deposited, do not give rise to a private cause of action. Indeed,

inmate trust account, which contained benefits paid to him by the VA. The trial court determined that the TDCJ is not a financial institution for purposes of Section 212, which is obvious given the definition provided in the regulations.[4] But that court nonetheless deemed Section 212 a "framework for the evaluation of the monies" in Mr. Hawes's account that "assists in the determination of what funds are protected" by Section 5301(a). It therefore applied the direct-deposit[5] and lookback provision[6] of Section 212 to the facts of this case and concluded that Section 5301(a) had not been violated.

Mr. Hawes argues that if the TDCJ does not qualify as a "financial institution," none of the provisions of Section 212 should apply. We agree. No authority addresses what role Section 212 plays when the alleged "garnishment" of federal benefits involves something other than a "financial institution." But the regulation itself is expressly limited to those institutions, 31 C.F.R. §212.2(a), and it was intended only to "establish[] procedures that financial institutions must follow when they receive a garnishment order . . . ," 76 Fed. Reg. 9,939 (Feb. 23, 2011). Moreover, enactment of Section 212 directly preceded the implementation of garnishment exemption identifiers encoded by the Treasury Department into automated clearinghouse ("ACH") payments. 76

---

Section 212 explicitly provides that "[f]ederal banking agencies will enforce compliance with this part." 31 C.F.R. § 212.11(a).

[4] A "financial institution" is defined as "a bank, savings association, credit union, or other entity chartered under Federal or State law to engage in the business of banking." 31 C.F.R. § 212.3. TDCJ possesses no such charter.

[5] Section 212 provides that a "benefit payment" is "a "Federal benefit payment . . . paid by direct deposit to an account," and an "account" is "an account . . . at a financial institution and to which an electronic payment may be directly routed." 31 C.F.R. § 212.3.

[6] Under Section 212, funds are protected during a two-month "lookback period" that "begins on the date preceding the date of account review and ends on the corresponding date of the month two months earlier." 31 C.F.R. § 212.3. The "protected amount" in an account is "the lesser of the sum of all benefit payments posted to an account between the close of business on the beginning date of the lookback period and the open of business on the ending date of the lookback period." *Id.*

No. 19-40341

Fed. Reg. 9,940 (Feb. 23, 2011). All evidence thus suggests that Section 212 was intended to apply only to those institutions expressly covered by its text.

Consequently, we must consider whether Section 5301(a) was violated without reference to the procedures outlined in Section 212. Answering that question requires understanding the status of the funds in Mr. Hawes's inmate trust account on December 11, 2015, the day the medical copayment was deducted.

According to Mr. Hawes, his VA benefits were previously directly deposited into an outside account at Altra Federal Credit Union until January 2014. Between January 2015 and December 2015, Mr. Hawes made several $80 transfers from that account into his inmate trust account. But other than a declaration, he offers no evidence that U.S. Treasury deposits were the only source of funds for the Altra account. And while four $133.17 VA benefit payments were directly deposited into Mr. Hawes's inmate trust account prior to the copayment deduction, that deduction was also preceded by two $300 deposits into the inmate account by a private citizen.

Because Mr. Hawes's VA benefits were commingled with transfers from his Altra account and with sizeable deposits by a private individual, it is impossible to know whether the medical co-payment was charged against funds that originated from the Department of the Treasury. Mr. Hawes therefore cannot state a claim under Section 5301(a), which protects only payments of federal benefits. With respect to Mr. Hawes's claims arising from the TDCJ defendants' purported violations of Section 5301(a), we therefore affirm the district court's grant of summary judgment.[7]

---

[7] Given this conclusion, it is unnecessary to analyze Mr. Hawes's claims involving conspiracy and theft or the defendants' argument that they are entitled to qualified immunity.

No. 19-40341

**C. Section 5301(a) and the Prison Litigation Reform Act**

After Mr. Hawes filed his complaint, the magistrate judge granted him leave to proceed *in forma pauperis* and assessed an initial partial filing fee of $43 pursuant to the Prison Litigation Reform Act ("PLRA"). Mr. Hawes objected, asserting that his VA benefits were his sole source of income and that they were exempt from garnishment or levy under Section 5301(a). The magistrate judge overruled both that objection, a subsequent objection, and a request for reimbursement.

On appeal, Mr. Hawes continues his challenge to the assessment of the initial partial filing fees, including the one associated with his appeal. He maintains that there is no support for the trial court's conclusion that funds protected under Section 5301(a) may still be used for payment of judicial filing fees. And according to Mr. Hawes, the plain language of Section 5301(a) precludes consideration of his VA benefits to calculate the initial filing fee.

Under 28 U.S.C. § 1915(b)(1) and (2), a prisoner filing a civil action or appeal *in forma pauperis* must pay the full filing fee over time through the assessment of an initial partial filing fee and the monthly withdrawal of funds. While Section 5301(a) does protect federal benefit payments from "attachment, levy, or seizure," nothing in the statute suggests (1) that recipients of benefits are exempt from statutory filing fee requirements; or (2) that assets acquired from VA benefits cannot be taken into account for purposes of determining whether a litigant is eligible for *in forma pauperis* status. *See* 38 U.S.C. § 5301(a)(1). We therefore affirm the trial court's assessment of filing fees.

**D. Due Process and the Prison Grievance System**

Mr. Hawes filed a Step One grievance following the seizure of his medical copay, in which he stated that the money he receives as a disabled veteran is exempt from collection by any creditor for any reason. Defendant Pace responded that the charge was for a dental plan and was correct. Mr. Hawes

then filed a Step Two grievance, in which he complained that the Step One grievance response ignored the impact of Section 5301(a). The response to the Step Two grievance affirmed the Step One response and indicated that the unit medical department and the health services division do not handle inmate money. Mr. Hawes now alleges that the prison grievance system did not afford him adequate due process and that Defendant Pace failed to meet her duty to adequately investigate grievances. Case law dictates that these claims be dismissed.

The Fourteenth Amendment protects inmates from deprivation of their property without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 536–37 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 (1986). "We assume arguendo that inmates have a protected property interest in the funds in their prison trust fund accounts, entitling them to due process with respect to any deprivation of these funds." *Morris v. Livingston*, 739 F.3d 740, 750 (5th Cir. 2014) (citations omitted). However, a state actor's unauthorized deprivation of an inmate's prison account funds "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

We have long acknowledged that Texas provides inmates challenging the appropriation of monies in their inmate trust fund account "with meaningful postdeprivation remedies, either through statute or through the tort of conversion." *Washington v. Collier*, 747 F. App'x 221, 222 (5th Cir. 2018) (unpublished) (per curiam) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 95 (5th Cir. 1996); *Murphy v. Collins*, 26 F.3d 541, 543–44 (5th Cir. 1994)). Because Texas affords Mr. Hawes an adequate postdeprivation remedy for the confiscation of the $100 in his inmate trust account, no actionable violation of his rights occurred, and his § 1983 claim against the TDCJ defendants "lacks

an arguable basis either in law or in fact." *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Mr. Hawes's claim against Defendant Pace also fails, not least because prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005).

We therefore affirm the district court's grant of summary judgment in favor of the defendants on these claims.

## III. CONCLUSION

The district court's grant of summary judgment is AFFIRMED.