# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-370

_____

FILED

**March 14, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

BRADLEY BOWE,
Plaintiff Below, Petitioner,

v.

MELISSA BOWE,
Defendant Below, Respondent.

_____

Appeal from the Family Court of Fayette County
Honorable Matthew D. England, Judge
Case No. FC-10-2021-D-199
AFFIRMED

_____

Submitted:  January 10, 2024

Filed:  March 14, 2024

James M. Cagle, Esq.                        R. Brandon Johnson, Esq.
Cagle Law Office,                           Wooton, Davis, Hussell & Johnson,
Charleston, West Virginia                   PLLC
Counsel for Petitioner                      Lewisburg, West Virginia
                                            Counsel for Respondent

CHIEF JUDGE SCARR delivered the Opinion of the Court.

SCARR, CHIEF JUDGE:

Petitioner Bradley Bowe appeals the Final Divorce Order entered by the Family Court of Fayette County on July 20, 2023. Mr. Bowe contends that the family court violated the Supremacy Clause of the United States Constitution by subjecting to equitable distribution a personal account in which he commingled his Veteran's Administration disability benefits ("VA benefits") with marital property from a business account. According to Mr. Bowe, VA benefits are not subject to equitable distribution because they are protected from attachment by federal law, so he is entitled to the entirety of the VA benefits he received during the marriage. The family court disagreed with Mr. Bowe, finding that the federal protections did not apply in this case because his VA benefits were commingled and indistinguishable from other funds, and therefore equitably distributed the bank account as marital property after subtracting as separate property what money he had in his personal account and business account prior to the marriage.

Having reviewed the parties' arguments, the record on appeal, and the controlling law, we affirm the decision of the family court. The law is clear that although the federal protections under 38 U.S.C. § 5301 typically would protect VA benefits from equitable distribution, that protection only exists when the VA benefits remain immediately available for the beneficiary's needs and are not commingled with marital assets. *See Griffith-Ball v. Ball*, No. M202000509COAR3CV, 2022 WL 1509675, at *3 (Tenn. Ct. App. May 13, 2022); *In re Marriage of Green*, 169 P.3d 202, 204 (Colo. App. 2007); *Bischoff v. Bischoff*, 987 S.W.2d 798, 799 (Ky. Ct. App. 1998); *Gray v. Gray*, 922 P.2d

1

615, 619–20 (Okla. 1996); *Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159, 160–61 (1962). Applying the guidance of other courts considering when VA benefits are subject to equitable distribution, we hold that when VA benefits are commingled with marital property, they are subject to equitable distribution unless the commingling party can establish by reliable tracing methods that a source of funds analysis can be performed to distinguish the VA benefits from the other funds. Here, Mr. Bowe did not provide sufficient financial information to trace the amount in his account solely attributable to his VA benefits, so the family court was correct to subject the account to equitable distribution as marital property. Accordingly, this Court affirms the Final Divorce Order entered by the Family Court of Fayette County on July 20, 2023.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Bradley and Melissa Bowe were married on May 23, 2017, and separated on July 26, 2021. No children were born of the marriage. Mr. Bowe began receiving VA disability benefits in July of 2010, due to a military-related medical condition. The monthly benefits were always directly deposited into a checking account which is solely in Mr. Bowe's name (the "personal account"). Ms. Bowe's name was never added to this account, as both parties maintained separate personal bank accounts.

Mr. Bowe owned and operated a construction business, River Valley Remodeling, LLC ("River Valley"), and had a second bank account dedicated to that business ("River Valley account"). During the marriage, Ms. Bowe closed her cleaning business to work

2

with Mr. Bowe at River Valley, and he deposited money earned through River Valley into the River Valley account. Mr. Bowe testified at the proceeding below that his construction company earned at least $211,000 during the marriage. Approximately one month before the parties separated, Mr. Bowe transferred $208,697.95 from the River Valley account into his personal account which, up until that point, had primarily been used to directly deposit his VA benefits. During the marriage, a total of $164,902.34 in disability payments was deposited into Mr. Bowe's personal account.

The Final Divorce Order was entered on July 20, 2023. In its order, the family court made the following findings of fact, which we paraphrase below:

1. Mr. Bowe's personal account was active and used by him throughout the marriage.

2. On the date of marriage, Mr. Bowe's personal account had a balance of $53,626.16.

3. Mr. Bowe was the sole owner of River Valley Remodeling, LLC. During the parties' first year of marriage, River Valley was operating at a deficit, but, during 2021, it had retained earnings in the amount of $111,421. On the date of marriage, the River Valley account contained $100,306.47.

4. One month prior to the parties' separation, Mr. Bowe transferred $208,697.95 from the River Valley account into his personal account, which increased the balance in his personal account to a total of $339,183.52.

3

5. The difference in the personal account's balance between the date of marriage and separation is $185,250.89.

6. Mr. Bowe testified that he earned at least $211,000 during the marriage, and those were the funds he transferred into his personal account.

7. The VA disability payments were deposited into the personal account, which was being used to pay for food, bills, and household expenses.

8. The disability payments were not isolated from other deposits and expenditures, and they were commingled with other funds in the personal account.

9. During the month of June 2021, there were a total of $215,737.50 deposits made into Mr. Bowe's personal account, some of which were redacted.

10. Even if the family court were to undergo a "source of funds" analysis, there would be insufficient evidence to attempt such an accounting due to the redacted information.

Based on the above findings of fact, the family court ruled that Ms. Bowe would receive $10,000 in attorney's fees, $10,500 for her one-half share of the marital funds used to reduce the marital home's mortgage, and $92,625.45 from Mr. Bowe's personal account. The family court arrived at $92,625.45 by subtracting the balances that Mr. Bowe had in his accounts at the time of marriage from the balance of his personal

account at the time of separation.[1] For equitable distribution purposes, the family court divided the resulting $185,250.89 in half, creating Ms. Bowe's $92,625.45 share. It is from this order that Mr. Bowe now appeals.

## II.    STANDARD OF REVIEW

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, 248 W. Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. Nov. 18, 2022); accord W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court order).

## III.    DISCUSSION

The issue before this Court is whether VA benefits retain their protection from "attachment, levy, or seizure by or under any legal or equitable process whatever," 38 U.S.C. § 5301, including equitable distribution, when they are commingled with other funds in a bank account and protected funds cannot be distinguished from other funds. Money earned by either spouse during a marriage is typically considered as divisible between the spouses upon their divorce as marital property. *See* W. Va. Code § 48-1-233(1)

---

[1] $339,183.52 (the personal account's balance at separation) - $100,306.47 (the River Valley account's balance before marriage) - $53,626.16 (the personal account's balance before marriage) = $185,250.89.

5

(2001). West Virginia law has a "marked preference for characterizing the property of the parties to a divorce action as marital property." Syl. Pt. 3, *Whiting v. Whiting*, 183 W. Va. 451, 453, 396 S.E.2d 413, 415 (1990). In a divorce action, the family court follows a three-step process: (1) the property of the spouses is divided into marital or non-marital property, (2) then the marital property is valuated, and (3) finally the court will divide the property between the spouses in accordance with the presumptions and principles of our law. *See id.* at Syl Pt. 1, 183 W. Va. at 452–53, 396 S.E.2d at 414–15; W. Va. Code § 48-7-103 (2001).

Although most money acquired by a spouse in a marriage is considered as marital property and is subject to the equitable distribution process, VA benefits are a notable exception and receive special protections under federal law:

> Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

38 U.S.C. § 5301. Section 5301 plainly establishes that VA benefits shall not be liable to attachment, levy, or seizure through any legal or equitable process whatever, before or after their receipt by the beneficiary. Accordingly, VA benefits are typically protected from equitable distribution by § 5301. *See Zickefoose v. Zickefoose*, 228 W. Va. 708, 712–13, 724 S.E.2d 312, 316–17 (2012). However, even the broad protections of § 5301 are not

6

unlimited in scope. The Supreme Court of the United States has grappled with the extent of the § 5301 protections of VA benefits in two primary cases.

In *Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159 (1962) the Court addressed when VA benefits lose their exemption from taxation. Although this scenario is different than equitable distribution, the immunity stems from the same source, § 5301, so the taxation analysis is instructive to equitable distribution. The *Porter* Court noted that "the exemption spent its force when the benefit funds 'lost the quality of moneys' and were converted into 'permanent investments.'" *Porter*, 370 U.S. at 160–61. The Court noted that the § 5301 protections to VA benefits should be liberally construed to protect funds granted by the Congress for the maintenance and support of the beneficiaries. *Id.* at 162. Analyzing what types of funds are "for the maintenance and support of the beneficiaries," the Court noted that the deposits in *Porter* were:

> not of a speculative character nor were they time deposits at interest. Moreover, it affirmatively appears that at times petitioner drew moneys from the savings and loan fund for his support and maintenance requirements and that no other funds whatever are now available to him, his disability payments having been cut off. It therefore appears clear to us that the savings and loan deposits here, rather than being investments, are the only funds presently available to meet petitioner's needs.

*Id. Porter*'s analysis instructs us to examine whether the funds are being used in a speculative fashion, and whether they are available to meet the beneficiary's needs. The Court clarified this analysis when it held that investments made with soldier's benefits lose their protections:

7

> we think it very clear that there was an end to the exemption when they lost the quality of moneys and were converted into land and buildings. The statute speaks of 'compensation, insurance, and maintenance and support allowance payable' to the veteran, and declares that these shall be exempt. We see no token of a purpose to extend a like immunity to permanent investments or the fruits of business enterprises.

*Carrier v. Bryant*, 306 U.S. 545, 549 (1939). Taking guidance from these cases, we must conclude that § 5301's protections apply to VA benefits unless they are no longer immediately available to meet the beneficiary's needs, or have been commingled such that the VA benefits cannot be distinguished from the non-protected funds.

Other jurisdictions have applied the principles of *Porter* and *Carrier* to cases regarding when VA benefits lose their § 5301 protections, some of which we find helpful to the case before us. In *Hawes v. Stephens*, 964 F.3d 412 (5th Cir. 2020), the Fifth Circuit Court of Appeals held § 5301 does not prevent the deduction of funds from a prison inmate trust account funded by VA benefits when the VA benefits are commingled such that it is impossible to know whether the deducted funds were VA benefits. *See Hawes*, 964 F.3d at 417. Additionally, other courts have consistently ruled that VA benefits lose their § 5301 protections from equitable distribution when they are used to purchase property, be it real or personal. *See Bischoff*, 987 S.W.2d at 799; *Gray*, 922 P.2d at 619–20; *Pfeil v. Pfeil*, 115 Wis. 2d 502, 506–08, 341 N.W.2d 699, 702–03 (Wis. Ct. App. 1983); *In re Marriage of Hapaniewski*, 438 N.E.2d 466, 471 (Ill. App. Ct. 1982).

8

We find the case *Griffith-Ball v. Ball* to be particularly instructive, as both *Griffith-Ball* and this case concern whether § 5301 protects VA benefits from equitable division when they are commingled with marital property in a bank account. *See Griffith-Ball*, 2022 WL 1509675, at \*3. In *Griffith-Ball*, the husband received VA benefits, but they were held in a bank account that also contained rent income, which was marital property. *Id.* The Tennessee Court of Appeals held that the husband placed the identity of his VA benefits in jeopardy when he combined them with marital rent income, and thus it was his burden to show that the VA benefits continued to be segregated or could be readily traced. *Id.* at \*4. As the husband had failed to prove his burden to show that the commingled VA benefits could be readily traced, the court concluded that the account was marital property subject to equitable division. *Id.*

In this case, the only issue that need be addressed is the effect of commingling upon the § 5301 protections to VA benefits, as whether or not they were immediately available due to the purchase of assets or investments is not at issue here. Mr. Bowe argues that § 5301 serves as an absolute bar upon the court's ability to alienate VA benefits from a beneficiary, claiming that the family court's finding that the commingled funds were marital property contravened federal law, and was thus prohibited by the Supremacy Clause. Were Mr. Bowe discussing funds that could actually be identified as VA benefits, he would likely be correct. *See Zickefoose*, 228 W. Va. at 712–13, 724 S.E.2d at 316–17. However, Mr. Bowe's arguments are misplaced, because to be protected by § 5301, the funds need to be identifiable as VA benefits, either by being segregated or

9

through a source of funds analysis. Applying the guidance from other courts to this case, we hold that when VA benefits are commingled with marital property, they are to be considered marital property subject to equitable distribution, unless the commingling party can establish and distinguish through a source of funds analysis the VA benefits from non-protected monies. Otherwise, the protections of § 5301 are lost when the VA benefits become undistinguishable from other funds.[2]

To rule otherwise would allow a VA benefits recipient with insufficient financial records to shield all their income from taxation, creditors, and "attachment, levy, or seizure by or under any legal or equitable process whatever," an absurd result surely not intended by Congress. To protect VA benefits from equitable distribution in a divorce, one can keep the VA benefits segregated from other funds in a separate account, or in the case of a commingled account, keep sufficient records to allow for a meaningful source of funds analysis to be easily applied to distinguish any VA benefits. Here, Mr. Bowe failed to take these steps. The law does not reward insufficient financial disclosures with a financial windfall by protecting a substantial sum of marital property from equitable distribution.

---

[2] Although the family court's order and the parties' briefs note the expenditure of VA benefits for personal and household expenses during the marriage, the actual use of the funds taken from the account has little bearing on our analysis. The important factors to our analysis are whether the VA benefits remaining in the account have been commingled with other funds, and if so, whether they can be distinguished by a source of funds analysis.

To perform a source of funds analysis to determine whether commingled VA benefits retain § 5301 protections, parties and courts should use standard, generally accepted accounting principles as the "reliable tracing methods." Tracing the source of funds is not a novel concept to courts nor accountants, and there are already several known generally accepted and reliable source of funds tracing methods.[3] However, as the family court was unable to apply any tracing method to Mr. Bowe's commingled VA benefits, we need not analyze the most appropriate tracing method to apply to this case. It should be noted that there could be substantially different outcomes in a case depending upon which tracing method is utilized. On this matter, we believe that the selection of the most equitable and appropriate reliable tracing method to be used in a given case is best left to the

---

[3] Some of the generally accepted reliable tracing methods include: (1) the lowest intermediate balance rule ("LIBR"), (2) *pro rata* distribution, (3) first in, first out ("FIFO") and (4) last in, first out ("LIFO"). Jason Wright, Marylee Robinson, & Jack Carriglio, *Examining the most commonly accepted equitable tracing methods in bankruptcy proceedings.*, AM. BANKR. INST. J. (Sept. 17, 2018), https://www.stout.com/en/insights/article/a-taxonomy-tracing-rules-one-size-does-not-fit-all. LIBR assumes that non-protected funds are always spent before any protected funds, so other, non-protected funds would be presumed to be spent before VA benefits. The *pro rata* method constructs relative percentages of protected funds, the VA benefits, to other funds in an account, and then allocates those percentages to any subsequent withdraws. *Id.* The FIFO rule presumes that funds are paid out in the order in which the deposits were received, regardless of whether the deposits were traced funds or not. *Id.* In contrast, the LIFO rule presumes that funds from an account are paid out by the most recently deposited funds. *Id.* These methods have been used by other courts in bankruptcy cases to trace the source of funds in a commingled account, and we suggest they may be suitable for consideration when tracing the amount of VA benefits in a commingled account. *See, e.g.*, *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 308 (7th Cir. 2014); *In re Dameron*, 155 F.3d 718, 724 (4th Cir. 1998); *Cmmw. Land Title Ins. Co. v. Doe*, 577 A.2d 1358, 1360 (Pa. Super. 1990); *United States v. Intercontinental Indus., Inc.*, 635 F.2d 1215, 1220 (6th Cir. 1980).

11

discretion of the trial court. *See United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004).

Here, Mr. Bowe received VA benefits into his personal account, and then commingled that money with marital property by transferring approximately $208,000 from the River Valley account into his personal account. Mr. Bowe was the commingling party, so to preserve his VA benefits as separate property under § 5301, it was his burden to show that a source of funds tracing analysis could be performed to distinguish the VA benefits from the other funds in his personal account. However, Mr. Bowe failed to carry his burden when he did not provide sufficient financial information to perform a source of funds analysis to trace and identify his VA benefits, such as by redacting the source of some of the deposits in his personal account. Petitioner's VA benefits were thus rendered unidentifiable and lost the protection of § 5301, and the family court was therefore correct to subject the personal account to equitable distribution.

Mr. Bowe also argues that all the VA benefits he accrued during the marriage should remain separate property and should have been subtracted from the amount of marital property the family court divided in equitable distribution.[4] We find this argument

---

[4] It should be noted that Petitioner's argument here is essentially an application of the LIBR tracing method with the replenishment principle. According to the replenishment principle, after the depletion of protected funds, a deposit will replenish the amount of the

unconvincing. Whenever VA benefits have been spent by a spouse on personal or real property, § 5301's protections do not apply to that property, as that money, having been already spent, is plainly no longer immediately available to meet the beneficiary's needs. *See Porter*, 370 U.S. at 162. Thus, we conclude that property purchased with VA benefits is subject to the typical rules regarding marital property and equitable distribution. A recipient of VA benefits cannot claw back funds spent during their marriage, and other courts have held similarly when faced with this issue. *See Bischoff*, 987 S.W.2d at 799; *Gray*, 922 P.2d at 619–20.

Mr. Bowe's VA benefits were deposited into his personal account, and money from that account was used for food, bills, and other household expenses throughout the parties' marriage. Those expenses are not refundable because they might have been funded with VA benefits. Section 5301's protections only apply to any VA benefits that remain unspent and are immediately available for Mr. Bowe's needs as the beneficiary. This result accords with our law's "marked preference for characterizing the property of the parties to a divorce action as marital property." *See Whiting*, Syl. Pt. 3, 183 W. Va. at 453, 396 S.E.2d at 415.

---

protected funds regardless of whether the new funds would otherwise be considered protected. Wright, Robinson, & Carriglio, *supra* note 3. Although our holding in this case does not reach the actual selection or application of tracing methods, courts should be wary that applying the replenishment principle in a LIBR analysis tracing VA benefits could contradict *Porter* by applying § 5301 protections to spent funds not immediately available for the beneficiary's needs.

We conclude that, although VA benefits would typically be protected from equitable distribution pursuant to 38 U.S.C. § 5301, they lose those protections when they are commingled and become undistinguishable from other funds. If VA benefits are commingled with other funds in an account and cannot be identified by reliable tracing methods, the account may be identified as marital property and be subject to equitable distribution. Mr. Bowe commingled his VA benefits, then failed to provide sufficient financial information for the family court to perform a meaningful source of funds analysis. Accordingly, the family court did not abuse its discretion in subjecting Mr. Bowe's personal account to equitable distribution as marital property.

## IV.    CONCLUSION

For the foregoing reasons, the family court's July 20, 2023, Final Divorce Order is affirmed.

Affirmed.